FRANK YOUNG, BY IS NEXT FRIEND, JOSEPH YOUNG, AND JOSEPH YOUNG, PLAINTIFFS-RESPONDENTS, v. RODNEY ROSS AND ROBERT F. FOUNTAIN, Jr., DEFENDANTS-APPELLANTS.

Submitted May 31, 1941—Decided September 19, 1941.

For the plaintiffs-respondents, *Parsons, Labrecque & Borden* (*Theodore J. Labrecque*).

For the defendants-appellants, *Durand, Ivins & Carton* (*J. Victor Carton*).

The opinion of the court was delivered by

CASE, J. Defendants appeal from a judgment entered in the Supreme Court pursuant to a jury verdict in the Monmouth Circuit against them for $5,099.51. The complaint alleged that the defendants owned and operated "an obstacle golf course under the name of 'Asbury Park Obstacle Golf'" on the Boardwalk in Asbury Park; that the plaintiff Frank

Young paid the admission fee, entered the course and, while making use of the facilities, was injured by defendants' negligence in the construction, maintenance and operation of the course.

Plaintiff was eighteen years of age. He had played the game before, not at this course but at Keansburg where there were comparable conditions. On the evening of June 14th, 1939, he went to Asbruy Park and paid his way into this concession. There was a sign which conspicuously showed the entertainment to be "Obstacle Golf." It is conceded that obstacle golf is intended, in a small way, to imitate a regular golf course. There are obstacles for both the ball and the player. The object is to circumvent the obstacles and to put the ball in the hole at the end of each "fairway" in the fewest possible number of strokes. On the course in question the obstacles took various forms—mounds, slopes, a windmill, a miniature stream flowing under pumped motion across the course, &c. A score card, marked "Asbury Park Obstacle Golf," was handed to the plaintiff. Above the space for the score it conspicuously bore the warning "Watch Your Step." Plaintiff used that card for scoring the six holes that he completed before his accident. He played those holes without incident. There were hazards on them that were of the same type as and that were equal to or greater than the one, presently to be mentioned, on the seventh hole. On the sixth hole, for instance, there was a slope that, in its size and general arrangement, was as steep as and in height equal to or greater than that on the seventh. Plaintiff then began playing the seventh' hole, which had been played, over a period of about seven years, by more than 350,000 people without mishap. There were many players preceding him. The course was crowded. The "fairway" was about fifty feet long. Toward the farther end was the hole. Beyond the hole was the six inch slope and some feet beyond that was what was known as the backstop. Plaintiff "teed off" and played his ball. It went past the hole, down the slope, hit the backboard and slightly rebounded. He followed the ball "down." There was a path along the "fairway," put there for the players to use if they wished to do so. There were no obstacles on that

path. Plaintiff could have taken it. He preferred to go down the "fairway." He fell at the point of the slope and was injured. Plaintiff did not testify that the slope or the angle at which it was built caused him to fall. Asked by his attorney how he fell he replied that his feet went from under him and that he then noticed the drop which he had not theretofore seen; all of which is consistent with the testimony of a chance observer that plaintiff stumbled over the golf stick with which he was playing.

Appellants present two main points, both turning upon the court's refusal to direct a verdict; first, that there was no evidence of improper construction which was the proximate cause of the fall of the plaintiff and that the evidence did not show what was the cause of the accident; second, that the plaintiff was guilty of contributory negligence and that he assumed the risk.

The case, on the proofs, turns upon whether the construction and maintenance of the six inch slope at approximately a 45 degree angle, without warning sign or handrail, was an act of negligence by the defendants, whether that condition was the cause of the accident, and, if these questions be resolved affirmatively, whether the plaintiff assumed the risk.

Plaintiff relies for proof of negligent construction upon the testimony of a man who seems to have a variety of occupations ranging from the operation of an antique shop to the business of contracting and building and who, by reason of a vague experience in constructing and repairing miniature golf courses and from reading undesignated magazine articles bearing thereon, assumed to be an expert and testified that a slope with a drop of greater than two inches to the foot was dangerous and should be protected either by a warning sign or a handrail. In the final analysis the witness reduced his criticism of the slope to the absence of a handrail. The construction of a handrail to assist a normal young man in making a single six-inch descent in an outdoor playground seems to be a fantastic refinement in safety precautions. Even expert testimony should not be permitted to transform an absurdity into a fact question for the jury. The testimony of the witness is unimpressive. We have doubt as to whether

there is proof beyond the measure of a scintilla to take the case to the jury on the questions of negligence and cause of the fall, and a determination thereon is rendered unnecessary by our disposition of the second point. We proceed to that point and in the discussion of it we shall assume that the construction was negligent and that the injury sued upon was caused thereby.

The principle of assumption of risk by a servant has been specifically held to extend to such dangers as he would discover by the exercise of ordinary care. *Atha and Illingworth Co.* v. *Costello,* 63 *N. J. L.* 27; *Western Union Telegraph Co.* v. *McMullen,* 58 *Id.* 155. "However, the doctrine of assumption of risk is also applicable to cases wherein the relationship of master and servant does not exist. This court has repeatedly held that an individual assumes all the ordinary risks of his voluntary acts or the environment in which he voluntarily places himself on the theory that he has the intelligence of the ordinary prudent individual who is aware of the ordinary risks of his voluntary acts and the risks of the particular environment in which he voluntarily entered." *Garton* v. *Public Service Electric and Gas Co.,* 117 *Id.* 520, 523. Patrons of a place of amusement assume the risk of the dangers normally attendant thereon, *Thurber* v. *Skouras Theatres Corp.,* 112 *Id.* 385, and, further, the risks ensuing from conditions of which they know, *Falk* v. *Stanley Fabian Corp.,* 115 *Id.* 141, or, as was suggested in *Castino* v. *Di Menzo,* 124 *Id.* 398, of which in the particular circumstances they are charged with knowledge, and which inhere therein. One who takes part in a sport "accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball." *Gardner* v. *G. Howard Mitchell, Inc.,* 107 *Id.* 311. One may not engage in a game and then be heard to complain of such characteristic incidents as give it the desired zest.

We conclude, as a matter of law, that the hazard whereat plaintiff met his injury was within the category of the dangers that were normally attendant upon an "obstacle golf" course, that it was in the full spirit of the game, a character-

istic feature which together with other obstacles gave the sport its atmosphere suggestive of golf, that to require the various barriers and traps to be marked by warning signs or equipped with handrails would detract from the fun and the illusion and serve to take from the enterprise that which the patrons wanted, and that the plaintiff, under the circumstances recited above, was, when he entered upon that stage of the game, chargeable with knowledge of the class of dangers there to be met with and that he assumed the risks thereof.

The judgment below will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 15.