RICHARD K. OFFRINGA, ADMINISTRATOR AD PROSEQUENDUM OF ADRIAN R. OFFRINGA, DECEASED. RICHARD K. OFFRINGA, INDIVIDUALLY, GLADYS M. McINTYRE, SUING ORIGINALLY AS GLADYS M. DICKENS, BY HORACE A. DICKENS, AS NEXT FRIEND, AND HORACE A. DICKENS, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS, v. BOROUGH OF WESTWOOD, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT.

Argued October 18, 1944—Decided February 2, 1945.

For the appellant, *Francis G. Schmidt, Jr.* (*John E. Selser,* of counsel).

For the respondents, *Eugene F. Hoffman* (*John J. Breslin,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is a sled-coasting case. The question for decision, broadly stated, is whether the judgment in review, based upon a jury verdict in favor of each plaintiff and against the defendant municipality, is tainted with reversible error. The answer to the stated question depends, in turn, upon the answer to the more specific question of whether the denial of defendant's motions for nonsuit and for a directed verdict, each bottomed upon the basic ground that the evidence failed to establish the actionable wrongdoing alleged, was error.

On the night of the accident (November 26th, 1938, about 10:00 P. M.), Adrian R. Offringa, owner and operator of a "very large racing sled," was coasting in an easterly direction on Washington Avenue, in the Borough of Westwood, New Jersey. At that time Gladys M. Dickens (now McIntyre) and Gertrude A. Poz were on the sled with him. As they had by-passed, without striking, a barrier located in their lane of traffic, at the intersection of Washington and Hillside Avenues, a collision occurred between the sled and an oncoming automobile, privately owned and operated by one not affiliated with the borough, and not a party to this suit. As a result of this collision, Adrian was instantly killed, and Mrs. McIntyre was severely injured.

The plaintiffs joined in one suit against the borough and its councilman, Carl Margraff, whose official capacity is designated as the "Commissioner of Roads and Parks." A voluntary nonsuit was, however, taken as to Margraff.

The theory upon which plaintiffs sought to fasten liability upon the borough was that it was guilty of active wrongdoing, of having created a nuisance, in that it caused the "barrier" to be placed in such a "position" that the "easterly" traffic on Washington Avenue was forced onto the same lane with the "westerly" traffic thereon, thus it was claimed that the barrier was the "proximate cause" of the accident, and that the question of whether the coasters voluntarily "assumed the risk" was, under the circumstances, one for the jury to determine.

We turn to the attendant circumstances of the accident.

Washington Avenue runs east and west. So far as is here pertinent, its highest point, referred to as the "hill," is its starting point. That point is located in the Township of Washington. The course or trip of sled coasters thereon began at the top of the hill and continued in the easterly lane of traffic on Washington Avenue for a distance of approximately 873 feet. This avenue is intersected, in the borough, by Hillside Avenue, 600 feet from the top of the hill, and by Lafayette Avenue, approximately 873 feet from its stated beginning. This avenue has been used by sled coasters for about eight or ten years. When so used the borough caused a barrier to be placed at or near the intersection of Washington and Hillside Avenues to guard against the dangers of "vehicular traffic" on the westerly lane of Washington Avenue.

Pursuant to complaints made of the existing dangers to sledders on Washington Avenue, Carl Margraff, in the early afternoon of November 26th, 1938, directed the superintendent of roads of the borough to take care of the existing situation at Washington and Hillside Avenues. The manner in which that direction was executed forms the basis of plaintiff's theory of the borough's liability. The proofs in support thereof come from witnesses for the plaintiffs. The only proofs offered for the borough were that it did not formally designate Washington Avenue as a "play street," or as a "sleigh riding hill," and that it did not own a barrier with the words "Play Street Do Not Enter," or words to like effect. It shall serve no purpose, in our view, to detail the proofs. It should suffice to state, that it shows a wooden barrier was placed at the northerly side of Washington Avenue where it is intersected by Hillside Avenue. This barrier was built of 2 x 6's, 12 to 14 feet long, standing approximately three feet from the ground, with horses inserted in slots at each end. The horse supports as well as the main plank across bore black and white stripes (*Cf. R. S.* 39:4–191). The proofs show that the barrier was moved by automobilists and sledders from the north side to the south side of Washington and Hillside Avenues and *vice versa;* that at or about 6:40 P. M., of the day of the accident, when an officer of the borough placed "bomb lights" at the ends of the barrier, it was on the

north side. But there is also proof that the barrier was originally placed at the most southerly side of Washington Avenue, at the intersection of Hillside Avenue, and that it bore the letters "Play Street Do Not Enter" or words to that effect.

The plenary uncontradicted proofs, however, are that from about 8:30 P. M., and the time of the accident, about 10:00 P. M., the barrier was situated, without change, on the southerly line of Washington Avenue at the intersection of Hillside Avenue, and that the bomb lights placed at both ends of the barrier were burning. The sledders would begin their run at the top of the hill, continue in the easterly lane of traffic on Washington Avenue, until the sled neared the barrier at Hillside Avenue, when, to by-pass the barrier, the sled would be swerved to the left, *i. e.,* onto the west lane of traffic on Washington Avenue, and when the barrier was passed the sled would be swerved to the right, to continue on the easterly lane of traffic on Washington Avenue to the end of the course, at or past Lafayette Avenue.

Between the hours of 8:30 P. M., and 10:00 P. M., Adrian, Mrs. McIntyre and Miss Poz, and about twenty-five or thirty others, were sled coasting on Washington Avenue in the manner described. Mrs. McIntyre had made six or eight of such trips, and Miss Poz had made five or six. Each had made two of their trips with Adrian. And it was on the last of such trips made by the three together that they met with the accident in issue and its stated resultant consequences.

Under these and all other circumstances, the trial judge concluded that plaintiffs had made out a case for the jury. He denied the motions for nonsuit and directed verdict made for the borough, submitted the case to the jury which, as already indicated, returned verdicts for the respective plaintiffs and against the borough. The denial of the motions was error.

Conceding, in the view we take of this case, that sled coasting on Washington Avenue was not a nuisance, that Adrian and Mrs. McIntyre had the right, in the absence of valid regulations to the contrary, to use that street for sled coasting pleasure, as well as for travel and business uses (*Lynch* v.

*Public Service Corp.,* 82 *N. J. L.* 712; 83 *Atl. Rep.* 382; *Reeves* v. *Prosser,* 109 *N. J. L.* 485, 491; 162 *Atl. Rep.* 729. *Cf. Bagni* v. *City of Bristol,* 127 *Conn.* 38; 14 *Atl. Rep.* (*2d*) 716; *Smith* v. *Pachter,* 344 *Pa.* 363; 25 *Atl. Rep.* (*2d*) 343; *City of Mingo Junction* v. *Sheline,* 130 *Ohio St.* 34; 196 *N. E. Rep.* 897), and further conceding the truth of the proofs that the placing of the barrier in the manner described was such active wrongdoing as to constitute a nuisance for which the borough would be liable for private injury resulting therefrom (*Cf. Hammond* v. *County of Monmouth,* 117 *N. J. L.* 11; 186 *Atl. Rep.* 452; *Fisher* v. *Nutley,* 120 *N. J. L.* 290, 292; 199 *Atl. Rep.* 40; *Allas* v. *Rumson,* 115 *N. J. L.* 593; 181 *Atl. Rep.* 175), nonetheless, we are constrained to conclude that plaintiffs were barred from the right of recovery, as a matter of law, upon the asserted ground of assumption of risk.

The ground of assumption of risk brings into play the maxim *"Volenti non fit injuria."* When Adrian and Mrs. McIntyre took part in the sport of sled coasting they legally accepted all the obvious dangers of which, in the particular circumstances, they knew, or were charged with knowing, were inherent in that sport, "just as a fencer accepts the risk of a thrust by his antagonist, or a spectator at a ball game the chance of contact with the ball." Cardozo, C. J., in *Murphy* v. *Steeplechase Amusement Co., Inc.,* 250 *N. Y.* 479; 166 *N. E. Rep.* 173; *Gardner* v. *G. Howard Mittchell, Inc.,* 107 *N. J. L.* 311, 315; 153 *Atl. Rep.* 607; *Young* v. *Ross,* 127 *N. J. L.* 211, 214; 21 *Atl. Rep.* (*2d*) 762, 764. See cases collated in the concurring opinion of Mr. Justice Heher in *Harenburg* v. *August,* 119 *N. J. L.* 83, 87; 194 *Atl. Rep.* 152.

Adrian and Mrs. McIntyre were at the time of the accident over eighteen years of age. Each held a clerical position. There is no suggestion that both were not blessed with the understanding and the mentality of the average boy and girl of their age group. Each knew of the existence of the barrier and that it was located at or near the two intersecting avenues, both of which were subjected to uses other than that of sled coasting. Clearly, each knew or were charged with

knowing, that the barrier could not and did not close off traffic on the westerly lane of Washington Avenue. With complete knowledge of these facts, they did nothing about this extra hazard in their easterly lane of coasting. The strong inference keeps projecting itself that the barrier was in all probability permitted to remain the extra hazard that it was to the end of satisfying the added thrill that the by-passing thereof provided. Be this, however, as it may, Adrian and Mrs. McIntyre with full knowledge and realization of the extra hazard of the barrier, chose voluntarily to risk that extra hazard while coasting around it on a "very large racing sled" without regard to the open traffic both on Hillside Avenue and on the westerly traffic lane on Washington Avenue.

The case would indeed be different if the existence of the barrier were neither known nor visible (*Fisher* v. *Nutley, supra*), or if the active wrongdoing alleged so bewildered and confused a faultless stranger to the highway and its existing conditions as to cause him to drive his car in a wrong direction resulting in a head-on collision. *Cf. Hallet* v. *Wm. Eisenberg & Sons, Inc.,* 116 *N. J. L.* 201; 183 *Atl. Rep.* 143.

Judgment is reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, PERSKIE, PORTER, COLIE, WELLS, RAFFERTY, THOMPSON, DILL, JJ. 13.