35 N.J. Super. 148 (1955)
113 A.2d 529
FRANCES PONA, AN INFANT BY HER GUARDIAN AD LITEM FRANCES PONA, AND FRANCES PONA, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
BOULEVARD ARENA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1955.
Decided April 15, 1955.
*150 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Sam Weiss argued the cause for the defendant-appellant (Messrs. Jacobson and Winter, attorneys).
*151 Mr. Elmer J. Bennett argued the cause for the plaintiffs-respondents (Messrs. Carpenter, Gilmour & Dwyer, attorneys; Mr. James P. Beggans, of counsel; Mr. Laurence Reich, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal by the defendant from a judgment for the plaintiffs entered on a jury verdict in a tort action.
About 2:30 P.M. on February 8, 1953 the plaintiff Frances Pona, a high-school girl of 14, with three other girls, paid the admission fee and was admitted to the indoor roller-skating rink owned and operated by the defendant in Bayonne, New Jersey. The actual skating rink is surrounded by an iron railing with a baseboard eight to ten inches high, in which railing there are six openings through which patrons enter and leave the skating floor. Along the walls are benches, and the area between the walls and the iron railing, about nine feet in width, serves as an aisle or passageway from the back to the front of the building where there is a refreshment stand.
The plaintiff estimated that there were about 200 skaters at the rink that afternoon. About 4 o'clock she was leaving the skating area to go and rest on one of the benches. She slowly skated through one of the exits and had gone about three feet toward the bench when a paper cup caught in a wheel of her left skate, causing her to fall and sustain injuries to her ankle and foot.
The defendant developed on cross-examination of the plaintiff that at least half an hour before the accident, she had noticed wrappers and paper cups in the area between the rink and the benches, that she knew it was dangerous to skate in that area, but that she did not report the littered condition to the defendant. In response to a question as to why she used that particular exit when she knew the litter on the floor made the area dangerous, she replied: "Because that was the first exit I came to, and I was tired. I wanted to sit down."
*152 There was also testimony that a skating number had just ended when the plaintiff went through the exit; that after every number there is a "clear the floor" signal upon which all skaters are required to leave the floor; that on the particular "clear the floor" signal when the plaintiff went through the exit some 200 skaters were leaving by various exits, perhaps 50 by the exit the plaintiff used, about 15 or 20 of whom were behind her.
One of the girls who came to the rink with the plaintiff testified that she had used all six exits and that there was a similar accumulation of paper wrappers and cups along both aisles.
The defendant was charged with negligence in the maintenance of the premises and in failing to provide suitable and sufficient receptacles for debris. The defendant denied the charges and asserted that the plaintiff had assumed the risk and was guilty of contributory negligence. At the trial, the defendant's motion for dismissal of the plaintiff's suit was denied and the issues were submitted to the jury which returned verdicts for the plaintiffs. The defendant moved for a new trial on the above grounds and also on the ground that the verdict was clearly against the weight of the evidence, the result of passion, prejudice and sympathy, and excessive in amount. The court denied the motion and this appeal ensued. The defendant now argues that the court erred in denying its motion for involuntary dismissal and in its charge to the jury.
The operator of a skating-rink is under a duty to exercise ordinary care to keep and maintain the premises reasonably safe and suitable for its intended purpose, including the approaches, aisles and floors. Griffin v. DeGeeter, 132 N.J.L. 381 (E. & A. 1945); Clayton v. New Dreamland Roller Skating Rink, Inc., 14 N.J. Super. 390 (App. Div. 1951); Gaffney v. America on Wheels, 16 N.J. Super. 484 (App. Div. 1951).
On this appeal, the defendant's negligence is assumed and is not argued. The essential question is whether the court *153 erred in submitting the issues of assumption of risk and contributory negligence to the jury.
The doctrine of assumption of risk has a dual nature. In one aspect it is contractual, and an injured person is held to have assumed the hazards normally attendant upon the sport or amusement in which he participates. Gardner v. G. Howard Mitchell, Inc., 107 N.J.L. 311 (E. & A. 1931); Young v. Ross, 127 N.J.L. 211 (E. & A. 1941).
"He makes the choice at his own risk and is taken to consent that the defendant shall be relieved of responsibility. The legal position is then that the defendant is under no duty to protect the plaintiff, who may be acting quite reasonably, and it is immaterial whether he has exercised proper caution." Prosser on Torts, § 51, p. 377.
The risk, however, does not extend to dangers not normally attendant upon the amusement or sport. Griffin v. DeGeeter, supra. In its other aspect, assumption of risk is so closely identified with contributory negligence that a practical distinction is difficult when considered in relation to the facts in a particular case. Contributory negligence implies the notion of some fault or breach of duty by the defendant which would sustain an action by the plaintiff but for the concurrence of his contributory negligence. The concept is an inseparable companion to that of primary negligence. The plaintiff may not, however, recover, not because the defendant owes him no duty, but because his own conduct precludes him from prevailing. Freschi v. Mason, 108 N.J.L. 272 (E. & A. 1931); Prosser on Torts, § 51, p. 217.
The tendency is to treat assumption of risk in its second sense and contributory negligence as convertible terms, so that they are now virtually identical concepts. Harenburg v. August, 119 N.J.L. 83 (E. & A. 1937); White v. Ellison Realty Corp., 5 N.J. 228 (1950); Scheirek v. Izsa, 26 N.J. Super. 68 (App. Div. 1953); Taneian v. Meghrigian, 15 N.J. 267 (1954); 1 Stevenson, Negligence in the Atlantic States, § 122, p. 217.
It is well settled that a dismissal by the court on the ground of assumption of risk or contributory negligence may *154 only be entered in the clearest case where a contrary hypothesis is not fairly admissible. Battaglia v. Norton, 16 N.J. 171 (1954). The elements "must be of such a prominent and decisive character as to leave no room for a difference of opinion thereof by reasonable minds." Shappell v. Apex Express, Inc., 131 N.J.L. 583 (E. & A. 1944). The facts must appear clearly and convincingly, or as the necessary and exclusive inferences to be drawn by all reasonable men in the exercise of a fair and impartial judgment; otherwise, the question is for the jury. Bacak v. Hogya, 4 N.J. 417 (1950).
The plaintiff should be held to the standard of care and caution required to be exercised by a girl of similar age, judgment, experience and environment. Hellstern v. Smelowitz, 17 N.J. Super. 366 (App. Div. 1952); Dillman v. Mitchell, 13 N.J. 412 (1953); Pangborn v. Central R.R. Co. of N.J., 18 N.J. 84 (1955).
On the issue of contractual assumption of risk, the plaintiff voluntarily assumed the ordinary risks incidental to roller-skating upon the rink and we need not enumerate the happenings which might come within this category. Here, the fall did not occur while the plaintiff was engaged in the sport of skating, nor on the skating area. Therefore, the issue of assumption of risk in its contractual sense, or as a risk of the game, was not involved. See Griffin v. DeGeeter, supra.
Regarding the issue of contributory negligence or of assumption of risk in that sense, a question of fact existed as to whether the plaintiff exercised the care expected of a girl of similar age and experience  whether one similarly circumstanced would have incurred the risk which her conduct involved. Solomon v. Finer, 115 N.J.L. 404 (Sup. Ct. 1935); Pangborn v. Central R.R. Co. of N.J., supra.
As noted above, when the plaintiff left the skating floor, she was in a crowd of some 50 skaters, all of whom were then leaving the floor by the same exit because of an "all clear" signal at the end of a skating number. There were other skaters both in front of and behind her as she went through the exit. It was well within the province of the jury to conclude that a person circumstanced as was the plaintiff *155 would reasonably go along with the crowd through the nearest exit, even if she saw debris on the floor. There was not much opportunity to stand around and survey the arena to determine which was the safest exit to use. Moreover, many skaters all afternoon had been using this and other exits without untoward incident. While the appellant strongly urges upon us the fact that she answered in the affirmative, on cross-examination, the question as to whether she knew whether it was dangerous to use the exit because of the litter on the floor, we do not regard this as conclusive of contributory negligence or assumption of risk. It was only an admission to which the jury might give such weight as it chose. The answer of a 14-year-old girl to such a question in the course of cross-examination during a trial might well have signified no more than the conclusion of the witness that the condition was dangerous because she had been injured as a result of it. But even taking it in its literal connotation as a confession of knowledge of the dangerous condition, the surrounding facts and circumstances belie the admission. It seems hardly likely that a 14-year-old girl, who had skated at that arena 12 or 13 times before and had gone through a number of exits that afternoon on several occasions, notwithstanding they were all littered with debris, without being hurt, and had seen many other persons doing the same thing, could have actually regarded the cups and wrappers on the floor as a condition making the exit dangerous for passage on skates. As was stated in Halpern v. Barbara, 5 N.J. Super. 87, 90 (App. Div. 1949), a mere use of the facility "did not ipso facto constitute negligence, unless the risk was so great that it was unreasonable for plaintiff to insist upon her right. Was it a risk that an ordinarily prudent person would not have taken?" It appears very clear to us that the question thus posed was one for the jury in the present case.
Moreover, the evidence here is that the plaintiff was tired and wanted to sit down on one of the benches. The testimony was that all of the exits were similarly littered, so that she had no other means of egress. It is true that she might have stood at the railing and called for an employee of the defendant *156 to clear the aisles, or she might have removed her shoe skates and walked to the bench. Whether the court, were it sitting as trier of the facts, might consider that she was contributorily negligent is not the test. So long as the minds of reasonable men might differ, a jury question is presented. It was proper then for the court to present to the jury the question as to whether in view of all the circumstances it was unreasonably hazardous for a girl of plaintiff's age and experience, similarly circumstanced, to attempt to skate from the rink to the bench.
A jury question arose, particularly in view of the testimony that all exits were similarly littered, and thus the plaintiff had no real alternative means of egress. There is a cluster of cases in this jurisdiction which hold that where a passageway is the only one available for use, it is not contributory negligence as a matter of law, for a plaintiff to use it even though he knows it to be unsafe. The test in each case is whether the jury believes that in so doing the plaintiff exercised the care which the circumstances required him to exercise for his own safety. Andre v. Mertens, 88 N.J.L. 626 (E. & A. 1916); Rush v. Commercial Realty Co., 7 N.J. Misc. 337 (Sup. Ct. 1929); Bailey v. Fortugno, 8 N.J. Misc. 739 (Sup. Ct. 1930); Herman v. Home Owners' Loan Corp., 120 N.J.L. 437 (Sup. Ct. 1938), affirmed 122 N.J.L. 94 (E. & A. 1938); DiGeso v. Franklin Washington Trust Co., 122 N.J.L. 152 (Sup. Ct. 1939); Halpern v. Barbara Holding Corp., supra; Cammon v. Altavilla, 21 N.J. Super. 240 (App. Div. 1952); Scheirek v. Izsa, supra; 1 Stevenson, Negligence in the Atlantic States, § 123, p. 220.
The defendant also contends that the court gave conflicting instructions to the jury on the question of assumption of risk. In the main charge, the court instructed fully on the elements of the doctrine, and the defendant did not object. However, after the complete charge, at the plaintiff's request, the court said:
"* * * If you are to believe the story of the infant plaintiff in this case that she fell in the aisle, why then, in that instance, you are not to determine that she was a patron of an amusement, *157 and therefore, the assumption of risk of a game is not to be applied against her. But if you believe the defendant's story that she was pushed as she was coming out of the skating rink, then she assumed that risk. That is, she was a patron in this amusement and therefore she assumed the risk."
We find no error in the supplemental charge. The court was merely informing the jury that if the injury occurred off the enclosed skating area, the doctrine of assumption of risk in the sense of voluntary exposure to the risks of a game or sport was not applicable  a correct statement of the rule of law applicable in such a situation. Griffin v. DeGeeter, supra. On a reading of the entire charge there was no prejudicial error in the court's instructions to the jury. The charge as a whole fairly and clearly imparted the instructions pertinent to the issues before them.
The judgment is affirmed.