38 N.J. Super. 439 (1955)
119 A.2d 166
ESTELLE KLINSKY (NOW ESTELLE KLINSKY MASON) AND RAYMOND MASON, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
HANSON VAN WINKLE MUNNING CO., INC., HANSON VAN WINKLE MUNNING ATHLETIC ASSOCIATION, INC., PINES OF RARITAN TOWNSHIP, INC., SWEEPSTAKES REALTY CO., INC., JOSEPH CALLAHAN, PRESIDENT, AND ANTHONY SEBER, DEFENDANTS-RESPONDENTS, AND LESLIE BATCHELOR, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued November 21, 1955.
Decided December 19, 1955.
*442 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. William J. O'Hagan argued the cause for plaintiffs-appellants (Messrs. Stout & O'Hagan, of counsel; Mr. Norman J. Currie, attorney).
Mr. Lawrence A. Carton, Jr. (Messrs. Roberts, Pillsbury & Carton, attorneys) and Mr. Robert V. Carton (Messrs. Durand, Ivins & Carton, attorneys) argued the cause for defendants-respondents.
The opinion of the court was delivered by CLAPP, S.J.A.D.
This appeal brings up questions as to assumption of risk and negligence. It is taken by the plaintiffs from a judgment of the Superior Court, Law Division, dismissing their action at the close of their case.
On the day of the accident Mrs. Estelle Klinsky Mason, one of the plaintiffs, was apparently an invitee at a family outing for the employees of the defendant Hanson Van Winkle Munning Co., Inc. The outing was held on certain grounds operated from time to time for such purposes by the defendant Pines of Raritan Township, Inc. While standing near a softball field located on these grounds, she was hit in the face by a softball bat which had slipped from the hands of the defendant Anthony Seber. Seber had struck at a ball while up at bat, and the bat had sailed through the air *443 90 feet to where she was standing. Moreover, she was then 30 feet beyond first base and 15 feet outside the foul line.
The trial court, after careful consideration of the matter, found Mrs. Mason was barred as a matter of law by the doctrine of assumption of risk. The question before us is whether it was proper for the court to have dismissed the action against four of the defendants Seber, Pines, the company and Hanson Van Winkle Munning Athletic Association, Inc., or any of them. The appeal has been abandoned as against the defendants, Sweepstakes Realty Co., Inc., and Joseph Callahan.
Some have claimed that generally speaking the term assumption of risk adds nothing to the law but confusion, and that it should be abandoned. James, Assumption of Risk, 61 Yale L.J. 141, 169 (1952); Editorial, Assumption of Risk  a False Issue, 73 N.J.L.J. 346 (1950). They point out  others have observed this, too  that the term has reference to at least two distinct concepts, each involving a different condition for its application.
In the first of these situations, the plaintiff has not been negligent. Restatement of Torts, § 466, comment d, § 893. However, the defendant is under no duty to warn him of the danger or to eliminate it or to take other precautions because the plaintiff has willingly assumed the risk  sometimes through a contract expressly relieving defendant of liability, more often through an acceptance of the risk, implied from conduct. Volenti non fit injuria. The term assumption of risk in this sense is said to be superfluous, because it is merely expressive of a lack of duty on the defendant's part.
In the second situation above referred to, the plaintiff has been negligent in assuming the risk. Compare Nauman v. Central & Lafayette Realty Co., Inc., 137 N.J.L. 428, 430 (Sup. Ct. 1948), affirmed 1 N.J. 124 (1948), with Saunders v. Smith Realty Co., 84 N.J.L. 276, 280 (E. & A. 1913) (in the Saunders case the two concepts are kept separate). In this second sense, the term assumption of risk is said to be superfluous because it has reference merely to one form of contributory negligence. Restatement of Torts, § 466 (a).
*444 Further, see Keeton, Personal Injuries Resulting from Open and Obvious Conditions, 100 U. Pa. L. Rev. 629, 633, 634, 648 (1952); Bohlen, Voluntary Assumption of Risk, 20 Harv. L. Rev. 14, 16 (1906); Seavey, Liability to One Aware of Danger, 65 Harv. L. Rev. 623, 624 (1952); Note, Liability of the Proprietors of a Baseball Park for Injuries to Spectators Struck by Batted or Thrown Balls, 1951 Wash. U.L.Q. 434, 442, 443; Pona v. Boulevard Arena, 35 N.J. Super. 148, 153 (App. Div. 1955). As to the English law, see Winfield, Torts (1954), 46.
Prosser concedes the soundness of the above analysis, but claims the term assumption of risk serves a useful purpose in both situations, for it focuses attention upon the fact that the plaintiff in both situations has voluntarily accepted the risk. Prosser, Torts (2d ed. 1955), 305. In any event, it seems to us that the term is worth preserving in the sense first stated. For in that situation, though the assumption of risk gives rise to a lack of duty on the defendant's part, nevertheless (notwithstanding that the plaintiff usually has the burden of proving that the defendant owes him a duty) the defendant here has the burden of proving the assumption of risk  that is, the burden of proving the lack of duty. See De Eugenio v. Allis-Chalmers Mfg. Co., 210 F.2d 409, 413 (3 Cir. 1954), and James, supra, at 167 (indicating that defendant has the burden of proving assumption of risk in both senses of the term). Moreover the law bears down on the defense of assumption of risk (in both senses) to this extent: the court is not permitted to dismiss an action on the ground of assumption of risk except in the clearest case or where the requisite elements of the defense have been established clearly and conclusively. Rapp v. Public Service Coordinated Transport, etc., 9 N.J. 11, 18 (1952); Scheirek v. Izsa, 26 N.J. Super. 68, 72 (App. Div. 1953); Pona v. Boulevard Arena, 35 N.J. Super. 148, 153, 154 (App. Div. 1955); cf. Prosser, p. 310; (compare this test with the usual test for dismissing a case where a defendant claims there is no proof of any duty on his part). Accordingly, for purposes of analysis at various stages of the case, it would *445 seem quite appropriate to fasten a distinguishing label on the concept of assumption of risk in the first sense and to separate this idea from the general idea of lack of duty.
We assumed above, in stating the first situation, that there may be an assumption of risk even though there is no negligence on the plaintiff's part. Hendrikson v. Koppers Co., Inc., 11 N.J. 600, 607 (1953); Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210, 223 (1954); Harenburg v. August, 119 N.J.L. 83, 86, 87 (E. & A. 1937); Cetola v. Lehigh Valley R. Co., 89 N.J.L. 691 (E. & A. 1916); Bohlen, supra, at 18, 19 (1906). It may be clarifying to illustrate this. A person cannot be said to be lacking in ordinary prudence merely because he walks on a golf links subjecting himself to the risk of being hit by a golf ball, cf. Schlenger v. Weinberg, 107 N.J.L. 130, 132 (E. & A. 1930); Toohey v. Webster, 97 N.J.L. 545 (E. & A. 1922); Annotation, 138 A.L.R. 541, 554; or because he walks on a miniature golf course subjecting himself to the risk of falling on a slope in the course, cf. Young v. Ross, 127 N.J.L. 211, 214 (E. & A. 1941). As to the spectators hit by a foul ball at a ball game, see Keeton, supra, at 640; Note, 1951 Wash. U.L.Q. 434; 17 B.U.L. Rev. 485 (1937); 26 Temp. L.Q. 206 (1952); Annotation, 142 A.L.R. 868; Ratcliff v. San Diego Baseball Club, 27 Cal. App.2d 733, 81 P.2d 625 (1938).
No attempt is or could successfully be made here charging Mrs. Mason with negligence as a matter of law. Hence we are concerned in this case with assumption of risk only in the first sense above stated  and in particular with one rule under the doctrine (which, it may be noted, applies equally to the doctrine in the second sense also). We may state the rule generally this way: plaintiff will be held not to have assumed a risk of danger unless he actually appreciated the danger or unless an ordinary prudent person in his position and with his experience would have appreciated it. Young v. Ross, 127 N.J.L. 211, 214 (E. & A. 1941); Garton v. Public Service Electric & Gas Co., 117 N.J.L. 520, 523 (E. & A. 1937); Picariello v. Linares & Rescigno *446 Bank, 127 N.J.L. 63, 65 (Sup. Ct. 1941), affirmed 127 N.J.L., at p. 565 (E. & A. 1942); Pona v. Boulevard Arena, 35 N.J. Super. 148, 154 (App. Div. 1955); cf. Castino v. Di Menzo, 124 N.J.L. 398, 401 (Sup. Ct. 1940); Hendrikson v. Koppers Co., Inc., 11 N.J. 600, 607 (1953). See Prosser, supra, at 309, 310; cf. James, supra, at 147, 148, 161, 162; Keeton, supra, at 642. Compare Restatement of Torts, § 466 (a) with § 893. He not only must have knowledge of the physical surroundings which create the danger, but he must comprehend and appreciate the danger. Beck v. Monmouth Lumber Co., 137 N.J.L. 268, 277 (E. & A. 1948); Prosser, supra, at 309.
Under this rule patrons of places of amusement assume the risk of obvious dangers. Offringa v. Borough of Westwood, 132 N.J.L. 493, 497 (E. & A. 1945); Young v. Ross, 127 N.J.L. 211, 214 (E. & A. 1941); Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325, 334 (E. & A. 1939). Indeed, the cases go further, stating that each patron assumes the risk of an ordinary danger normally attendant on such a place. Griffin v. De Geeter, 132 N.J.L. 381, 382 (E. & A. 1945); Young v. Ross, supra; Falk v. Stanley Fabian Corp. of Delaware, 115 N.J.L. 141, 145 (E. & A. 1935); Thurber v. Skouras Theatres Corp., 112 N.J.L. 385, 387 (Sup. Ct. 1934); Pona v. Boulevard Arena, 35 N.J. Super. 148, 153, 154 (App. Div. 1955). This raises a question as to a patron who because of age, inexperience, etc., did not appreciate the risks normally attendant on the place. We think the law will take a somewhat more lenient view as to the defendant's duty toward such a person provided the defendant may reasonably expect that patrons of the place will be aware of the danger, and provided he also has taken reasonable precautions for them in view of such expectations. In this respect, however, the law is concerned not with the doctrine of a voluntary assumption of risk, but with defendant's lack of duty in view of the character of the place. On such an issue (unlike the issue of assumption of risk) the plaintiff has the burden of proof  *447 that is, the plaintiff must prove, among other things, that the danger is not of the normal sort.
In order not to involve ourselves in some of the possibilities presented here, we will assume that Mrs. Mason, were she seated in a grandstand at the place of the accident, would have had sufficient experience to have realized there was a danger at that point from flying bats. Furthermore, in this case we will make no attempt to distinguish between the risk of injury from foul balls which occur in every ball game and the risk of a bat being thrown 90 feet which, of course (notwithstanding the proofs indicating that this does occur every now and then), is a much more unusual matter. The question, therefore, on the motion for dismissal is whether it appears clearly and conclusively that an ordinary person in Mrs. Mason's position in the very situation presented would have realized the danger; or whether it could be held as a matter of law that the danger was such a normal incident of this place of amusement at the very location of the accident that it could be said to have been reasonably expectable and, more than that, to have been reasonably provided for.
This requires some consideration of the particular situation. The outing grounds were a compact area, mostly fenced-in, about 350 feet by 350 feet, containing  in addition to the softball field  a place for pony rides, a tavern, refreshment stand, tables, pavilion, volleyball court, playground for children (including slides, swings, sand boxes and so on), horseshoe courts, rest rooms and perhaps "two parking lots * * * within the grounds"  quite a few things considering the size of the area. There was no fence or other demarcation separating the ball field from these various activities. Moreover, in connection with this outing, tickets had been sold for 295 persons, bringing something of a crowd into this comparatively small space.
When Mrs. Mason was hit she was standing 10 to 15 feet in from the fence, and fairly near one of the exit gates in that fence. She had been talking to one of the players at the players' bench, but had left that point and was approaching *448 a friend who had called to her. The friend, seeing the bat flying through the air, screamed, and Mrs. Mason then turned toward the field and was hit.
Mrs. Mason was not in a grandstand at a big game; she was moving about on an outing ground, somewhat cluttered with activities and people  fairly near the area of an exit gate. It cannot be said to have been made out here clearly and conclusively that an ordinary prudent person in Mrs. Mason's position would have realized she was in danger; nor can it be said as a matter of law that danger was a normal, reasonably expectable incident of the situation.
Certain defendants then argue that plaintiffs are confronted with a dilemma: the risk of a bat flying from a batter's hands is either a normal risk  in which case defendants claim that plaintiffs are barred by the doctrine of assumption of risk; or it is an abnormal risk  in which case they claim it is a matter which they could not reasonably have anticipated and which therefore they cannot be held responsible for. The primary fallacy here is that neither of these propositions should be resolved by the court as a matter of law. Indeed, even the jury may not be faced with the dilemma; for a defendant may have a duty to take precautions against a danger even if it is not of the normal sort.
The remaining question in the case is whether there was any proof of negligence on the part of the four defendants, Seber, Pines, the Athletic Association and the company. The trial court held there was sufficient proof of this, except with respect to the company.
As for the batter, his own attorney below (he is not represented on the appeal) conceded that there was sufficient proof of negligence as to his client to send the case to the jury on that issue. As to him, therefore, the motion for dismissal should have been denied.
The motion should also have been denied as to the Pines which operated the premises. For we think a jury question was raised as to whether it should not have done some policing or supervising of the crowd or the area. *449 According to plaintiffs' proofs, none of this was done. Passers-by, not interested in the ball game, coming from the exit gate or from some other place, might be expected to be walking quite near the point where plaintiff stood when she was hit. In fact, the danger area about the ball field was in no way marked off; there was no fence, wire screening, rope or any other device to keep the crowd back, except a backstop.
The motion for dismissal should have been denied also as to the Hanson Van Winkle Munning Athletic Association, Inc. The association claims that a group of employees under the leadership of one Oliver J. Brown, only some of whom were members of the association, "ran the picnic"; and there is some proof of that. It seems to be claimed further that this group acted on their own and not on behalf of either the company or the Athletic Association; but this is sufficiently unlikely as to give rise to a contrary inference. The company gave the association $1,000 for the outing, seeking to promote good will among the employees; and the association paid all the costs of the outing out of this $1,000 and the proceeds realized from the sale of tickets. Later the association accepted Oliver J. Brown's instruction to it to return to the company the surplus of the $1,000 which was not used. What authority had he over the association?
Leslie Batchelor "as president" of the association ordered tickets printed and assisted in the collection of them at the gate on the day of the affair and also paid the bills for the outing. The treasurer of the association told the Pines the number of people expected to attend the outing, helped collect the tickets at the gate and otherwise assisted in the financial business for the occasion. The association bought softballs and softball bats. The bill for these balls and bats was made out, not to Oliver J. Brown, but to the company; however, the association paid it. At least one softball game was arranged for in advance of the picnic by a game committee appointed by Oliver J. Brown. The association bought playing cards and also jump ropes, paddle balls, balloons, bats, etc., for the children. It guaranteed the Pines it would *450 pay for a certain number of meals, whether the people were there or not, and it paid the bill of the Pines.
We think there was an inference that the association arranged for and ran the outing and that it had a duty to take measures to protect persons from injury from the ball game. No measures of this sort were undertaken by it or by any one. We think that it was up to the jury to determine whether the association had control of the situation to such a degree that it could have averted the danger. Bango v. Carteret Lions Club, 12 N.J. Super. 52, 55 (App. Div. 1951), certification denied, 7 N.J. 347 (1951).
The action was properly dismissed as against the Hanson Van Winkle Munning Co., Inc. Plaintiffs claim that the incorporated Athletic Association and other persons were acting on the company's behalf as instruments to maintain good labor relations. Their theory must be that the association and these persons were sufficiently subject to the company's control with respect to the details of the operation of the outing as to be agents for the company and to render the company liable for their negligent conduct. Restatement of Agency, § 250. Such an agency is said to exist usually where the principal retains the right to direct not only what shall be done, but how it shall be done. Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261, 264 (1953); Errickson v. F.W. Schwiers Co., 108 N.J.L. 481, 483 (E. & A. 1932). There is no sufficient proof of this.
Reversed as to Seber, Pines and the Athletic Association; and new trial ordered as to them. Affirmed as to other defendants.