**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3282-18T3

GAIL F. DEGRAAF, a/k/a GAIL
DEGRAAF and JACOBUS
DEGRAAF, her spouse,

     Plaintiffs-Appellants,

v.

STARLUX GOLF, LLC, a/k/a
STARLUX MINI GOLF, and
OCEAN RIO INVESTMENTS,
LLC,

     Defendants-Respondents,

and

HARRIS MINIATURE GOLF
COURSES, INC., and RICHARD
LEHEY,

     Defendants.

_____

Submitted March 23, 2020 – Decided May 1, 2020

Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2007-17.

Davis Saperstein & Salomon PC, attorneys for appellants (Jorge R. de Armas, of counsel and on the briefs; Steven Benvenisti and Robert S. Florke, on the briefs).

Reilly McDevitt & Henrich, PC, attorneys for respondents (Tracey M. Mc Devitt and Ryan Alan Notarangelo, on the brief).

PER CURIAM

In this slip and fall negligence case, plaintiff Gail F. DeGraaf (plaintiff)[1] and her husband plaintiff Jacobus DeGraaf appeal from orders granting summary judgment to defendants Ocean Rio Investments, LLC and StarLux Golf, LLC, and denying plaintiffs' motion for reconsideration. We have carefully reviewed the record, agree with the motion court that plaintiff failed to present evidence defendants breached any duty owed to plaintiff, and affirm.

I.

In our review of the record before the motion court, we accept the facts and all reasonable inferences therefrom in the light most favorable to plaintiffs because they are the parties against whom summary judgment was entered. Brill

---

[1] Because plaintiffs share their surname and Jacobus DeGraaf asserts only a claim for loss consortium, we refer to Gail F. DeGraaf as "plaintiff."

A-3282-18T3

v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Applying that standard, the record before the trial court established the following facts.

Plaintiff, her adult daughter Sarah DeGraaf, and two friends played miniature golf at an eighteen-hole course owned by Ocean Rio Investments, LLC and operated by StarLux Golf, LLC in Wildwood. Plaintiff was playing the course for the first time. After playing the first fifteen holes, Sarah DeGraaf fell and skinned her knees.

To obtain paper towels to clean her daughter's knees, plaintiff walked toward the course's clubhouse, traversing the area of the course comprising the sixteenth hole. While doing so, plaintiff stepped into a depressed area on the sixteenth hole and injured her ankle.

Plaintiff previously played miniature golf at other courses and was aware miniature golf courses are designed with uneven surfaces and other obstacles to make the game enjoyable and challenging. After playing the first fifteen holes at defendants' course, and prior to traversing the sixteenth hole to get the paper towels, plaintiff knew the course had uneven surfaces and other obstacles. The depressed area of the sixteenth hole where plaintiff fell was an intended part of the course's design.

Prior to the course opening, a Wildwood construction official inspected the course and issued a certificate of occupancy for it. Defendants displayed a sign at the course and included a notice on the scorecard given to patrons, stating: "[s]tay on designated walkways and fairways. The course has uneven terrain. Please pay attention and watch your step." There was no separate sign at the sixteenth hole warning about an uneven surface and no direct means of egress from the fifteenth hole, where Sarah DeGraaf skinned her knees, to the course clubhouse other than by traversing the area comprising the sixteenth hole.

In support of their claim, plaintiffs obtained an expert's report from Kelly-Ann Kimiecik, P.E., a consulting engineer. In her report, Kimiecik identified the documents and discovery materials she reviewed, and she explained she conducted a physical inspection of the course. She concluded the sixteenth hole includes an unmarked, unsafe, steep surface slope that "creates a distinct hazard for pedestrians." She further opined "[t]he homogenous blending of the turf walking surface obscured the steep slope," and the course "fails to provide proper slopes for pedestrians wanting to egress the facility." She found the steep slope on the sixteenth hole presented a dangerous condition; defendants failed to post a warning about the slope on the sixteenth hole; and defendants failed to

provide patrons with walkways separate from the various holes on the golf course and information about where to go in the event of an injury.

In her report, Kimiecik relied on a Wildwood municipal ordinance requiring commercial structures "be kept free of . . . hazards to the safety of occupants, pedestrians and other persons," including "holes" and other conditions. She also cited International Building Code and American Standard Test Method standards for walkways and egress ramps. Kimiecik asserted "administrative code and industry safety standards for ramp walking surfaces recommend that the steep ramp slope be eliminated in order to alleviate a walking surface hazard," and the area where plaintiff fell did not "provide proper slopes for pedestrians wanting to egress the facility."

At her deposition, however, Kimiecik testified the municipal ordinance provision prohibiting hazardous holes and other conditions on commercial properties "was not intended to relate to a playing hole" on a miniature golf course and does not "apply to the uneven surface on" the sixteenth hole that caused plaintiff's fall. She also testified she was not aware of any "regulation or industry standard that requires separate paths separate from the actual holes" on a miniature golf course, and she was not of the opinion defendants were "required to have a separate pathway so people could leave the course without

walking through the playing area." She also acknowledged Wildwood issued a certificate of occupancy for defendants' miniature golf course.

Plaintiff also relied on the expert report and testimony of golf course architect Michael Hurdzan. In his report, Hurdzan opined that the "drop off" to the depressed area of the sixteenth hole "was measured to have a slope of 10.5% which could easily cause [plaintiff] to lose her balance and fall." Hurdzan also opined the fact that the artificial turf throughout the sixteenth hole was the same color and texture "contributed to the depression and slope not being open and obvious." Hurdzan acknowledged the depressed area was intended "to create 'strategy' for the mini[ature] golf experience." However, in his opinion, the area could have been raised with a slight slope or left flat with a different height of artificial grass to eliminate the "trip and fall hazard, but . . . still create strategy for the mini[ature] golf hole."

At his deposition, Hurdzan described his experience as an architect of standard golf courses and acknowledged he was not an expert in miniature golf course design. He claimed the issue presented was unrelated to miniature golf course design and instead related to the safety of putting areas and walking surfaces. He testified there are no laws, regulations, or industry standards that apply to depressions or the slopes of undulations on miniature golf course holes,

6

or that require or recommend the use of different colored artificial turf on a miniature golf course. Hurdzan did not rely on any building codes as a standard or guideline for his opinion, and he testified he was unaware of any information suggesting there was "any reason to believe that [the depression on the sixteenth hole] was a hazard." He offered his opinion based on his "personal experience with slopes based upon [his] many years as an expert."

Defendants also provided the motion court with expert reports from a consulting engineer and the long-time owner of the company that designed and constructed defendants' golf course and more than 900 other miniature golf courses. Defendants' expert reports disputed the claims made by plaintiffs' experts; asserted the sixteenth hole was designed and constructed in accordance with all applicable building codes; and averred the depression on the sixteenth hole constituted a standard obstacle that was inherent in the risks regularly associated with miniature golf.

After hearing argument on defendants' summary judgment motion, the court determined defendants did not breach a duty of care owed to plaintiff because the slope on the sixteenth hole that caused her to fall constituted a risk inherent in the intended design of the miniature golf course. The court found the course was designed with slopes and undulations as part of the game, and

7

the fact that plaintiff traversed the sixteenth hole to obtain paper towels after playing the first fifteen holes did not convert the sixteenth hole into a means of egress subject to different standards or requirements or into anything other than what it was, "a miniature golf [hole] . . . with risks." Thus, the court rejected plaintiffs' expert's reliance on construction standards for walkways to define defendants' duty in designing the sixteenth hole on defendants' miniature golf course. The court entered an order granting defendants' summary judgment motion and dismissing the complaint.

Plaintiffs filed a motion for reconsideration. The record on appeal includes only plaintiffs' notice of motion and the court's order denying the motion. We are therefore without any basis to summarize the basis for the motion or the reasons for its denial. In any event, following the court's entry of an order denying the motion, this appeal followed.

## II.

Plaintiffs argue the court erred by granting defendants summary judgment because plaintiff was not in the act of playing golf when she fell, but instead she was using the portion of the course comprising the sixteenth hole as a walkway. Plaintiffs contend defendants owed a duty of care to patrons using the sixteenth

8

hole as a walkway to provide warnings about hazardous slopes or, in the alternative, to provide a separate and safe pathway to the clubhouse.

We review orders granting summary judgment applying the same standard as the motion court. Shields v. Ramslee Motors, 240 N.J. 479, 487 (2020); State v. Perini Corp., 221 N.J. 412, 425 (2015) (citing Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013)). Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Burnett v. Gloucester Cty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009). Issues of law are subject to the de novo standard of review, and the trial court's determination of such issues is accorded no deference. Kaye v. Rosefielde, 223 N.J. 218, 229 (2015).

The mere happening of an accident raises no presumption of negligence. Malzer v. Koll Transp. Co., 108 N.J.L. 296, 297 (E. & A. 1931); see also Long v. Landy, 35 N.J. 44, 54 (1961). Negligence will not be presumed; rather it must be proven. Rocco v. N.J. Transit Rail Operations, Inc., 330 N.J. Super. 320, 338-39 (App. Div. 2000). "The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and

damages." Shields, 240 N.J. at 487 (quoting Robinson v. Vivirito, 217 N.J. 199, 208 (2014)); see also J.H. v. R&M Tagliareni, LLC, 239 N.J. 198, 218 (2019). Determining "whether a defendant owes a legal duty to another and the scope of that duty are generally questions of law for the court to decide." J.H., 239 N.J. at 218 (quoting Robinson, 217 N.J. at 208).

"In general, '[b]usiness owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is in the scope of the invitation.'" Stelluti v. Casapenn Enters., LLC, 408 N.J. Super. 435, 446 (App. Div. 2009) (quoting Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003)). "The duty of due care requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Nisivoccia, 175 N.J. at 563; see also Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013). The duty is imposed because "business owners 'are in the best position to control the risk of harm.'" Hojnowski v. Vans Skate Park, 187 N.J. 323, 335 (2006) (quoting Kuzmicz v. Ivy Hill Park Apartments, Inc., 147 N.J. 510, 517 (1997)).

It is well established that the duty owed by the owner of a commercial recreational facility to its patrons is defined in part by the purpose for which the

facility is designed. In <u>Young v. Ross</u>, the plaintiff tripped, fell, and was injured on a depression on the fairway of a hole on a miniature golf course. 127 N.J.L. 211, 213 (E. & A. 1941). At trial, a jury found the owners and operators of the course negligent. <u>Id.</u> at 211. The Court of Errors and Appeals reversed, finding the plaintiff assumed the risk of being injured by the obstacles presented as part of the inherent design of the course and concluding:

> as a matter of law, that the hazard whereat plaintiff met his injury was within the category of the dangers that were normally attendant upon an 'obstacle golf' course, that it was in the full spirit of the game, a characteristic feature which together with other obstacles gave the sport its atmosphere suggestive of golf, that to require the various barriers and traps to be marked by warning signs or equipped with handrails would detract from the fun and the illusion and serve to take from the enterprise that which the patrons wanted, and that the plaintiff, under the circumstances . . . , was, when he entered upon that stage of the game, chargeable with knowledge of the class of dangers there to be met with and that he assumed the risks thereof.
>
> [<u>Id.</u> at 214-15.]

A patron's assumption of a risk inherent in an activity "is an alternate expression for the proposition that [the] defendant was not negligent." <u>Hojnowski</u>, 187 N.J. at 340 (quoting <u>Meistrich v. Casino Arena Attractions, Inc.</u>, 31 N.J. 44, 49 (1959)).

A-3282-18T3

Similarly, in <u>McLaughlin v. Rova Farms, Inc.</u>, the Court considered the duty of the operator of a recreational area that included a lake equipped with a diving board. 56 N.J. 288, 303 (1970). The Court explained the facility operator "was bound to use care to have and keep [the facilities or accommodations provided to the patrons] in a reasonably safe condition for the purpose for which they were apparently designed," <u>id.</u> at 303-04, and the operator should warn patrons about facility conditions when they are "not reasonably safe and suitable for the use for which they were . . . adapted," <u>id.</u> at 304.

A commercial recreational facility has no liability "for injuries sustained as a result of an activity's inherent risks so long as that enterprise has acted in accordance with 'the ordinary duty owed to business invitees, including exercise of care commensurate with the nature of the risk, foreseeability of injury, and fairness in the circumstances.'" <u>Hojnowski</u>, 187 N.J. at 340-41 (quoting <u>Rosania v. Carmona</u>, 308 N.J. Super. 365, 374 (App. Div. 1998)); <u>see also</u> <u>Rosania</u>, 308 N.J. Super. at 373 (explaining instructors and coaches of sporting activities "owe a duty of care to persons in their charge not to increase the risks over and above those inherent in the sport").

Here, plaintiffs do not dispute the depression on the sixteenth hole is part of the course design and constitutes an inherent element of the miniature golf

game offered at defendants' course. During her deposition, plaintiff acknowledged she was aware obstacles, slopes, and depressions were part of the course design intended to make the game challenging and enjoyable. She further admitted she observed obstacles and depressions on the course as she played the first fifteen holes and knew the remaining holes on the course, including the sixteenth, would contain uneven surfaces. Indeed, plaintiff concedes defendants would not have breached any duty if she had injured herself walking across the sixteenth hole while playing the game with a golf club in her hand because the depression in which she stepped was an obstacle that was an inherent part of the course and game.

Plaintiff argues defendants owed to her a duty independent of the risks she concedes she knew and understood were inherent in the golf course and game. She asserts defendants breached the duty because she walked across the sixteenth hole in pursuit of paper towels instead of a golf ball, and she was not playing miniature golf when she fell. Plaintiff's distinction makes no meaningful difference. The change in plaintiff's subjective intent in walking across the sixteenth hole—pursuing paper towels instead of a golf ball—did not modify defendants' duty or impose a different duty to eliminate or warn of

13

obstacles, slopes, and depressions plaintiffs concede present risks inherent in the golf course and game.

Moreover, the undisputed facts establish that, although plaintiff was not playing the sixteenth hole when she fell, she traversed the sixteenth hole knowing its inherent physical characteristics had not been instantly altered when she chose to pursue paper towels instead of continuing to play golf. Based on those circumstances, we discern no basis, and plaintiffs offer none, supporting a finding defendants owed a duty to provide plaintiff a pathway across the sixteenth hole free of the obstacles, slopes, and depressions she concedes were an inherent and attendant part of the course and game.

We reject plaintiff's reliance on the reports and deposition testimony of her experts to support her claim defendants breached a duty to provide a means of egress across the sixteenth hole free of the hazard she otherwise concedes presented a risk inherent in the course and game. Plaintiffs' expert's opinions constituted inadmissible net opinions that did not provide competent evidence supporting her negligence claim.

Where "an evidence determination" is presented to a trial court considering a summary judgment motion, the evidentiary determination must be addressed first. Townsend v. Pierre, 221 N.J. 36, 53 (2015). In our de novo

A-3282-18T3

review of the award of summary judgment to defendant, we "proceed[] in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court." Ibid.

We are persuaded by defendants' argument plaintiffs' experts offered inadmissible net opinions in opposition to the summary judgment motion. "The net opinion rule is a 'corollary of'" N.J.R.E. 703, "'which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (citation omitted). In pertinent part, the net opinion "rule requires that an expert '"give the why and wherefore" that supports the opinion, "rather than a mere conclusion."'" Id. at 54 (citation omitted). Under the rule, "a trial court must ensure that an expert is not permitted to express speculative opinions or personal views[.]" Id. at 55. "[A]n expert offers an inadmissible net opinion if he or she 'cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is "personal."'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 410 (2014) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011)); see also Riley v. Keenan, 406 N.J. Super. 281, 296 (App. Div. 2009) (explaining experts "must be able to point to generally accepted, objective standards of practice and not merely standards personal to them").

"Evidential support for an expert opinion may include what the expert has learned from personal experience and training; however such experience, in turn, must be informed and given content and context by generally accepted standards, practices, or customs of the . . . industry." Satec, Inc. v. Hanover Ins. Grp., Inc., 450 N.J. Super. 319, 333 (App. Div. 2017). There must be some "authority supporting [the] opinion," which can take the form of "any document, any written or unwritten custom, or established practice that the [industry] recognized as a duty it owes . . . ." Ibid. "[T]he source of the standard of care enunciated, . . . by which to measure plaintiff's claimed deficiencies or to determine whether there was a breach of duty owed [by] defendant[,]" must be identified. Id. at 334.

Here, Kimiecik's opinion is founded on a municipal ordinance she concedes does not define the requirements for miniature golf holes and building codes that apply to walkways providing egress from structures. She concedes depressions and obstacles are risks inherent in the miniature golf game and courses, but her report does not cite to any industry standards applicable to the construction of miniature golf courses. Further, she testified there are no industry standards requiring pathways within a miniature golf course that are separate from the golf holes themselves.

Similarly, Hurdzan acknowledged he was not an expert in miniature golf course design, and he did not support his opinions with reference to any accepted building codes or other standards in the miniature golf industry. To the contrary, he conceded he was not aware of any laws, regulations, or industry standards applicable to depressions or the slopes on miniature golf course holes or requiring use of different colored artificial turf on a miniature golf course. Hurdzan was unaware of any information suggesting there was "any reason to believe that [the depression on the sixteenth hole] was a hazard," and he acknowledged his opinions concerning the depression on the sixteenth hole were based on his years of personal experience with slopes.

In sum, plaintiffs' experts' reports and opinions are untethered to any standard or practice in the creation of the hazards, slopes, and obstacles inherent in the risks associated with a miniature golf course. They constitute inadmissible net opinions, see Satec, Inc., 450 N.J. Super. at 333-34, were based on the experts' respective personal standards, and were not competent evidence supporting plaintiffs' opposition to defendants' summary judgment motion.

We are convinced plaintiffs failed to present sufficient credible evidence establishing defendants breached any duty owed to plaintiff. Plaintiff tripped on a miniature golf course hazard that was an inherent part of the design and

risks that were part of the game. Plaintiffs' experts failed to provide admissible testimony defendants violated any law, regulation, or other industry standard supporting a duty to construct or maintain the hazard in a manner different than that which existed on the sixteenth hole. The motion court correctly determined that, as a matter of law, plaintiffs failed to present sufficient evidence demonstrating defendants breached any duty owed to plaintiff.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3282-18T3