777 A.2d 380 (2001)
342 N.J. Super. 527
Colleen SCHNEIDER and Mark Schneider, Plaintiffs-Appellants,
v.
AMERICAN HOCKEY AND ICE SKATING CENTER, INC., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 2001.
Decided July 16, 2001.
*381 Richard A. Amdur, Jr., Eatontown, argued the cause for appellants (Drazin and Warshaw, attorneys; Mr. Amdur, on the brief).
Barry S. Brownstein, Livingston, argued the cause for respondent (Spector, Gadon & Rosen, attorneys; Mr. Brownstein, on the brief).
*382 Before Judges SKILLMAN, WECKER and LESEMANN.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether the operator of a hockey rink has a duty to protect spectators from pucks that are hit into the stands, and if so, the scope of that duty. We conclude that a hockey rink operator has a limited duty to provide a protected area for spectators who choose not to be exposed to the risk posed by flying pucks and to screen any spectator area that is subject to a high risk of injury from flying pucks. We also conclude that plaintiff failed to present any evidence that defendant breached this limited duty and therefore the trial court correctly granted summary judgment dismissing her personal injury action.
Defendant American Hockey and Ice Skating Center, Inc., owns and operates an ice hockey rink in Farmingdale, Monmouth County, which apparently is used solely for amateur competition. The facility has two areas for spectators: bleachers along one side of the rink, which have five or six rows, and an enclosed room above the bleachers. There are wooden boards around the rink that are approximately three feet in height. There is also plexiglass shielding in the spectator area that extends approximately three to four feet above the wooden boards. The wooden boards and plexiglass provide complete protection from flying pucks for spectators sitting in the first row of bleachers and partial protection for spectators sitting in the second row. The room above the bleachers is completely enclosed by plexiglass, which provides total protection from flying pucks.
Plaintiff Colleen Schneider's teenage sons played hockey at defendant's facility on a regular basis. During her sons' practice sessions, plaintiff, a school teacher, would sit in the enclosed room and do her schoolwork. However, when her sons played games, she would sit in the bleachers. Over the years her sons had been playing hockey, plaintiff attended approximately 400 games. Plaintiff observed pucks entering the bleacher area at least once a game, but never saw a puck hit anyone prior to her accident.
On October 12, 1997, plaintiff attended a hockey game in which her sons were playing, seating herself in the second row of bleachers. Shortly after the game began, a puck was hit into the stands, which struck plaintiff between the eyes, causing her personal injuries. Plaintiff did not see the puck come off the player's stick because she was looking at another player on the opposite side of the rink.
Plaintiff subsequently brought this personal injury action, claiming that the unenclosed part of the spectator area in defendant's facility constituted an unreasonably dangerous condition. Her husband, Mark Schneider, asserted a per quod claim.[1] After discovery was completed, defendant moved for summary judgment.
The trial court concluded that defendant owed a limited duty of care to spectators, which it had fulfilled by installing plexiglass above the wooden boards that shields spectators in the first row of seats and providing an enclosed room for spectators who do not want to be exposed to a risk of injury from a flying puck. The court also noted that plaintiff had not presented any expert opinion concerning applicable safety standards for the type of hockey rink operated by defendant. Accordingly, the trial *383 court granted defendant's motion and dismissed plaintiff's complaint.
The only New Jersey opinion we have been able to locate that deals even indirectly with the duty of care a commercial sports facility owes to spectators is Klinsky v. Hanson Van Winkle Munning Co., 38 N.J.Super. 439, 119 A.2d 166 (App.Div. 1955), certif. denied, 20 N.J. 534, 120 A.2d 661 (1956). In that case, a person standing near a softball field at a facility rented to businesses for summer social functions was hit by a bat that slipped out of the hands of a participant. We held that the injured party could maintain a claim against the operator of the facility, because it could not be concluded as a matter of law that "an ordinary person in [her] position would have realized she was in danger" or that "the danger was a normal, reasonably expectable incident of the situation." Id. at 448, 119 A.2d 166. But in reaching that conclusion, we were careful to point out that the facility included not only a softball field but also places for pony rides, a children's playground, volleyball court and refreshment stand, and that the plaintiff was simply standing in an open area near an exit gate that was not demarcated as part of the softball field. Id. at 447-49, 119 A.2d 166. Thus, Klinsky does not directly deal with the duty of care owed to spectators at an athletic event. Moreover, in Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 55-56, 155 A.2d 90 (1959), the Supreme Court expressed disagreement with the part of the Klinsky opinion that placed the burden on the facility operator to prove the absence of a duty of care.
The determination whether a party has a duty of care, and the scope of such a duty, are questions of law that must be decided by the court. Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502, 694 A.2d 1017 (1997). This determination involves "a rather complex analysis that considers the relationship of the parties, the nature of the riskthat is, its foreseeability and severityand the impact the imposition of a duty would have on public policy." Crawn v. Campo, 136 N.J. 494, 503, 643 A.2d 600 (1994) (quoting Dunphy v. Gregor, 136 N.J. 99, 108, 642 A.2d 372 (1994)).
Although there is no New Jersey case law that deals directly with the duty of a sports facility operator to protect spectators from the risk of injury from a flying ball or puck, there are a substantial number of cases in other jurisdictions that have addressed the issue. See generally, Carolyn Kelly MacWilliam, Annotation, Liability of Owner or Operator of Skating Rink for Injury to Patron, 38 A.L.R. 5th 107, 181-85 (1996); James L. Rigelhaupt, Annotation, Liability to Spectator at Baseball Game Who is Hit By Ball or Injured as Result of Other Hazards of Game, 91 A.L.R.3d 24, 39-81 (1979); Annotation, Liability for Injury to One Attending Hockey Game or Exhibition, 14 A.L.R.3d 1018, 1021-27 (1967). Most of these cases deal with the duty of an operator of a baseball park to protect spectators from foul balls. See, e.g., Aldes v. Saint Paul Ball Club, 251 Minn. 440, 88 N.W.2d 94 (1958); Akins v. Glens Falls City Sch. Dist., 53 N.Y.2d 325, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981); Jones v. Three Rivers Mgmt. Corp., 483 Pa. 75, 394 A.2d 546 (1978). However, the cases involving claims of persons injured by flying hockey pucks hold that the operator of a hockey rink has the same general duty of care as the operator of a baseball park. See, e.g., Modec v. City of Eveleth, 224 Minn. 556, 29 N.W.2d 453, 455-57 (1947); Gilchrist v. City of Troy, 113 A.D.2d 271, 495 N.Y.S.2d 781, 783 (1985), aff'd, 67 N.Y.2d 1036, 503 N.Y.S.2d 718, 494 N.E.2d 1383 (1986); Pestalozzi v. Philadelphia Flyers, Ltd., 394 Pa.Super. *384 420, 576 A.2d 72, 74-75 (1990); Moulas v. PBC Prods., Inc., 213 Wis.2d 406, 570 N.W.2d 739, 744 (Ct.App.1997), aff'd 217 Wis.2d 449, 576 N.W.2d 929 (1998).
There are some cases which hold that the operator of a sports facility has "no duty" to provide spectators with protection from flying balls or pucks, because a person who attends a sporting event assumes the risks inherent in watching the sport. See, e.g., Lang v. Amateur Softball Ass'n of Am., 520 P.2d 659, 662 (Okla.1974); Jones v. Three Rivers Mgmt. Corp., supra, 394 A.2d at 548-51. However, the more commonly accepted rule is that a sports facility has a "limited duty" of care to protect spectators from flying balls or pucks. See, e.g., Bellezzo v. State, 174 Ariz. 548, 851 P.2d 847, 852-53 (Ct.App. 1992); Akins v. Glens Falls City Sch. Dist., supra, 441 N.Y.S.2d 644, 424 N.E.2d at 533. Some cases hold that this limited duty may be satisfied by simply affording spectators the opportunity to purchase a ticket in an area that is protected by netting or plexiglass. See, e.g., Rudnick v. Golden W. Broadcasters, 156 Cal.App.3d 793, 202 Cal.Rptr. 900, 901-02 (1984); McNiel v. Fort Worth Baseball Club, 268 S.W.2d 244, 246-47 (Tex.Civ.App.1954). However, what has come to be recognized as the prevailing rule is that a sports facility operator's limited duty of care has two components: first, the operator must provide protected seating "sufficient for those spectators who may be reasonably anticipated to desire protected seats on an ordinary occasion," and second, the operator must provide protection for spectators in "the most dangerous section" of the stands. Akins v. Glens Falls City Sch. Dist., supra, 441 N.Y.S.2d 644, 424 N.E.2d at 533; accord Bellezzo v. State, supra, 851 P.2d at 852-53; Maytnier v. Rush, 80 Ill.App.2d 336, 225 N.E.2d 83, 87 (1967); Arnold v. City of Cedar Rapids, 443 N.W.2d 332, 333 (Iowa 1989); Anderson v. Kansas City Baseball Club, 231 S.W.2d 170, 173 (Mo.1950); Erickson v. Lexington Baseball Club, Inc., 233 N.C. 627, 65 S.E.2d 140, 141 (1951); Lawson v. Salt Lake Trappers, Inc., 901 P.2d 1013, 1015-16 (Utah 1995). The second component of this limited duty ordinarily may be satisfied by the operator providing screened seats behind home plate in baseball and behind the goals in hockey. See Akins v. Glens Falls City Sch. Dist., supra, 441 N.Y.S.2d 644, 424 N.E.2d at 533; Gilchrist v.. City of Troy, supra, 495 N.Y.S.2d at 783; Lawson v. Salt Lake Trappers, Inc., supra, 901 P.2d at 1015-16.
Although the operator of a commercial recreational facility, like the operator of any other business, has a general duty to exercise reasonable care for the safety of its patrons, McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 303-04, 266 A.2d 284 (1970), the measure of that duty is "due care under all the circumstances." Clohesy v. Food Circus Supermarkets, Inc., supra, 149 N.J. at 506, 694 A.2d 1017 (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 276, 445 A.2d 1141 (1982)). The critical circumstance that determines the scope of the duty of an operator of a baseball field or hockey rink is that most spectators prefer to sit where they can have an unobstructed view of the game and are willing to expose themselves to the risks posed by flying balls or pucks to obtain that view. See Akins v. Glens Falls City Sch. Dist., supra, 441 N.Y.S.2d 644, 424 N.E.2d at 533. Consequently, it is not unreasonable to accommodate this preference, so long as the sports facility operator provides sufficient screened seats for those spectators who may be reasonably expected to request protected seats and also screens any seats that pose an unduly high risk of injury from flying balls or pucks. See ibid.
*385 The imposition of this limited duty of care for spectators at sporting events is indirectly supported by our Supreme Court's recent decisions concerning the standard of care that governs participants in recreational sporting activities. In Crawn v. Campo, supra, 136 N.J. 494, 643 A.2d 600 and Schick v. Ferolito, 167 N.J. 7, 767 A.2d 962 (2001), the Court held that participants in such sporting activities may be liable to other participants only for intentionally wrongful or reckless conduct. One reason the Court adopted this standard is that "the risk of injury is a common and inherent aspect of informal sports activity" and "participants ... assume the ordinary risks of those activities." Crawn, supra, 136 N.J. at 500-01, 643 A.2d 600. Although the operator of a sports facility is subject to a standard of care based on negligence rather than the recklessness standard applicable to participants in recreational sporting activities, McLaughlin, supra, 56 N.J. at 303-04, 266 A.2d 284, it is appropriate in defining a sports facility operator's duty of care to consider that many spectators choose to "assume the ordinary risks" of being struck by a flying ball or puck in order to obtain an unobstructed view of the playing field and that these are "common and inherent" risks of attending a baseball or hockey game. Crawn, supra, 136 N.J. at 500-01, 643 A.2d 600.
Plaintiff failed to present any evidence to show that defendant breached a sports facility operator's limited duty of care. Defendant admittedly provided viewing areas for spectators who did not wish to be exposed to any risk from flying pucks both in the first row of bleachers and in the enclosed room above the bleachers. Moreover, defendant's facility did not contain any seating directly behind the goals, which generally is considered to be the most dangerous spectator area in a hockey rink, and plaintiff did not offer any evidence that the unprotected seats in the side area of the rink pose an unduly high risk of injury from flying pucks. Therefore, the trial court correctly granted defendant's motion for summary judgment.
Affirmed.
NOTES
[1] The references to "plaintiff" in this opinion are to Mrs. Schneider.