794 A.2d 867 (2002)
350 N.J. Super. 227
Derene DERRICOTTE, Plaintiff-Appellant, and
Willie Derricotte, her spouse, Plaintiff,
v.
UNITED SKATES OF AMERICA, d/b/a Branch Brook Park Roller Skating Rink and Terrence Pegas, Defendants-Respondents, and
Essex County, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued March 19, 2002.
Decided April 16, 2002.
*869 Sergio G. Carro, Denville, argued the cause for appellant (Einhorn, Harris, Ascher, Barbarito, Frost & Ironson, attorneys; Mr. Carro, on the brief).
Nicholas A. Giuditta, III, Cranford, argued the cause for respondents.
Before Judges SKILLMAN, WALLACE, JR. and WELLS.
*868 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether the Roller Skating Rink Safety and Fair Liability Act (the Act), N.J.S.A. 5:14-1 to 5:14-7, confers immunity upon a roller skating rink operator for negligently instructing a person how to roller skate. We conclude that the Act does not govern a claim arising out of alleged negligence in connection with a skating lesson. Therefore, we reverse the dismissal of plaintiff's complaint.
Defendant United Skates of America d/b/a Branch Brook Park Roller Skating Center (United Skates)[1] distributed a leaflet advertising free roller skating lessons on Saturday mornings. Responding to this promotion, plaintiff, Derene Derricotte, an overweight woman in her mid-thirties who had never skated before, came to defendant's facility on the morning of September 13, 1997 to obtain a free lesson.
*870 At that time, the roller skating rink was being used exclusively for lessons and thus was not open to the general public. Plaintiff informed the instructor, defendant Terrence Pegas, that she had not skated before and was "very nervous." According to plaintiff, Pegas gave her only a few minutes of instruction in a carpeted area, during which she moved less than five feet. Pegas then told plaintiff she should go onto the smooth hardwood floor by herself, without touching the wall or any other surface. Plaintiff followed this direction and, after proceeding a little more than five feet on the smooth floor, she fell backwards, sustaining serious injuries.
Plaintiff brought this personal injury action against United Skates, Pegas and Essex County, which owns the property on which the skating rink is located. United Skates and Pegas moved for summary judgment on the ground that plaintiff's fall was an inherent risk of skating for which they could not be held liable under the Act.
In opposing defendants' motion, plaintiff submitted an expert report which concluded that Pegas had been negligent in failing to evaluate her skating capability, failing to devote sufficient time to teaching her how to skate, failing to give her any instruction on the smooth surface skating floor, and failing to assist her out onto the floor when she began to skate.
The trial court granted defendants' motion and dismissed the complaint. The court observed that the Act "restore[s] the old assumption of risk type of defense" for roller skating, and that the only way this defense can be "overcome ... is if the operator fail[s] to adhere to one of the statutor[y] ... responsibilities ... set forth in [N.J.S.A. 5:14-4]." Therefore, the court concluded that even though those statutory responsibilities do not deal with teaching a person how to roller skate, the Act nevertheless immunizes defendants from liability for Pegas's alleged negligence in connection with the skating lesson offered to plaintiff.
When it enacted the Roller Skating Rink Safety and Fair Liability Act in 1991, L. 1991, c. 28, the Legislature declared that roller skating "provides a wholesome and healthy family activity which should be encouraged," that "roller skating rink owners face great difficulty in obtaining liability insurance coverage," and that "[i]n order to make it economically feasible for insurance companies to provide coverage to roller skating rinks, the incidence of liability should be more predictable." N.J.S.A. 5:14-2. To make such liability more predictable, the Act sets forth lists of responsibilities of roller skating rink operators, N.J.S.A. 5:14-4, and roller skaters, N.J.S.A. 5:14-5. Most of a rink operator's responsibilities relate to the condition of the premises, such as "maintain[ing] the skating surface in reasonably safe condition and clean[ing] and inspect[ing] the skating surface before each session." N.J.S.A. 5:14-4(d). In addition, the Act provides, in regard to supervision of skaters, that a rink operator must "have at least one floor guard on duty for every approximately 200 skaters" any time a rink "is open for sessions." N.J.S.A. 5:14-4(c). However, the Act contains no specific standards relating to roller skating lessons.
N.J.S.A. 5:14-6 provides that "[r]oller skaters and spectators are deemed to have knowledge of and to assume the inherent risks of roller skating, insofar as those risks are obvious and necessary." This section further provides that "[t]hese risks include, but are not limited to, injuries which result from incidental contact with other roller skaters or spectators [and] injuries which result from falls caused by loss of balance." N.J.S.A. 5:14-7 provides that "[t]he assumption of risk set forth in *871 [N.J.S.A. 5:14-6] shall be a complete bar of suit and shall serve as a complete defense to a suit against an operator by a roller skater or spectator for injuries resulting from the assumed risks, ... unless an operator has violated his duties or responsibilities under [the Act]."[2]
Calhanas v. South Amboy Roller Rink, 292 N.J.Super. 513, 679 A.2d 185 (App.Div. 1996) is the only reported opinion interpreting the Act. In that case, the plaintiff was injured in a collision with another skater, who was allegedly skating recklessly. According to plaintiff, the other skater was skating erratically for some period of time before the accident, but the guards did nothing to enforce the rink's rules prohibiting such skating. The trial court granted the rink summary judgment on the grounds that plaintiff's injuries had been caused by an "incidental contact" with another skater within the intent of N.J.S.A. 5:14-6, and that the rink had discharged its responsibilities under N.J.S.A. 5:14-4(c) by having at least one floor guard on duty for every 200 skaters. However, we rejected this reasoning and reversed, stating that "[n]ecessarily implicit in the duty to post floor guards is a duty to post adequately trained guards who take due care to render competent and watchful supervision." Id. at 525, 679 A.2d 185. In reaching this conclusion, we observed that the Act does not "absolve the roller skating rink operator from its common law duty of reasonable care in the carrying out of its express statutory duties." Id. at 526, 679 A.2d 185. We also concluded that a trier of fact could find that plaintiff's accident was not caused by an "incidental contact" with another skater because the skater's reckless behavior was not "an inherent and necessary risk of skating." Id. at 521, 679 A.2d 185.
We conclude for similar reasons that the Act does not immunize a rink operator from liability for negligently instructing a person how to roller skate. Under the Act, a skater is only deemed to assume "inherent" risks of roller skating that are "obvious" and "necessary." A rink operator's failure to give adequate instruction to a person who has never skated before is not an "inherent," "obvious" or "necessary" risk of skating. Instead, it is a risk that can be avoided by proper instruction and supervision. Cf. Rosania v. Carmona, 308 N.J.Super. 365, 373, 706 A.2d 191 (App.Div.), certif. denied, 154 N.J. 609, 713 A.2d 500 (1998)("Instructors and coaches owe a duty of care to persons in their charge not to increase the risks over and above those inherent in the sport.").
In fact, it is even clearer in this case than it was in Calhanas that plaintiff's fall as a result of the rink's alleged negligence in teaching her how to skate was not an "inherent," "obvious" or "necessary" risk of skating. Plaintiff's claim in Calhanas was that the rink had negligently supervised free skating by failing to stop a reckless skater. The rink's defense was that it had discharged its express *872 statutory responsibility under N.J.S.A. 5:14-4(c) by having at least one floor guard on duty for every 200 skaters. To overcome this defense, the court had to read into the Act an implied duty on the part of the rink "to post adequately trained guards who take due care to render competent and watchful supervision." 292 N.J.Super. at 525, 679 A.2d 185. In contrast, the Act does not contain any standards at all relating to skating lessons. Consequently, unless the Act is construed to totally immunize rink operators from liability for negligence relating to skating lessons, the only standard by which such conduct can be judged is the common law standard of reasonable care under the circumstances. Since we held in Calhanas that "[t]he purpose of the Act was not to immunize operators but to afford them more predictable liability exposure," id. at 525, 679 A.2d 185, we are satisfied that in the absence of any specific "more predictable" statutory standards relating to skating lessons, a rink operator's liability for this activity is governed by ordinary negligence principles.[3]See Reisman v. Great Am. Recreation, Inc., 266 N.J.Super. 87, 94-97, 628 A.2d 801 (App.Div.), certif. denied, 134 N.J. 560, 636 A.2d 519 (1993) (holding that negligence claim against ski facility operator that was not encompassed by expressly delineated responsibilities under the "Skiing Act," N.J.S.A. 5:13-1 to -11, upon which the Act was based, Calhanas, supra, 292 N.J.Super. at 520, 679 A.2d 185, was governed by general negligence principles relating to a landowner's duties to business invitees); see also Brett v. Great Am. Recreation, Inc., 144 N.J. 479, 498-503, 677 A.2d 705 (1996).
We reject defendants' argument that plaintiff's accident was a "fall[ ] caused by loss of balance" within the intent of N.J.S.A. 5:14-6. What the Legislature undoubtedly contemplated when it identified falls as an example of "the inherent risks of roller skating" was a person skating on his or her own who loses balance, rather than a person skating under the direction and control of one of the rink's employees during a skating lesson. Plaintiff's proofs would support a finding that her fall was not caused by plaintiff simply losing her balance but rather by Pegas directing her to skate by herself on a smooth surface before she had been given the training required to engage in that activity. Such an accident, as in Calhanas, is not "a normal incident of skating," id. at 523, 679 A.2d 185, but rather a breach of the rink's "common law duty of reasonable care in the carrying out of its... duties." Id. at 526, 679 A.2d 185.
We also reject defendants' argument that plaintiff's claim is barred because she violated her statutory duty to "[a]ccept the responsibility for knowing the range of [her] own ability to negotiate the intended direction of travel while on roller skates and to skate within the limits of that ability." N.J.S.A. 5:14-5(d). This duty has no applicability when a skater is acting under the direction and control of a skating instructor rather than skating on her own. In fact, one of the objectives of skating lessons should be to familiarize a novice skater with his or her physical and other limitations. Thus, in an instructional setting, the duty imposed by N.J.S.A. 5:14-5(d) does not arise until the instructor conveys the required knowledge to the *873 student of his or her capabilities and the inherent risks of skating.
Accordingly, the summary judgment in favor of defendants is reversed and the case is remanded for trial.
NOTES
[1] Shortly before the oral argument in this court, defendants filed a motion to remove United Skates from the caption of the appeal. Even though United Skates has actively participated in this litigation for more than two years by filing an answer and motion for summary judgment in the trial court and an answering brief in this court, the certification of United Skates' risk manager submitted in support of this motion alleges that United Skates "has no ownership or business relationship to Branch Brook Park Roller Skating Center." Plaintiff opposed this motion, arguing that there is evidence United Skates is involved in the operation of the rink. We find no basis for amending the caption of this appeal and therefore deny defendants' motion. If United Skates in fact plays no role in the operation of the rink in which plaintiff's accident occurred, it may make an appropriate motion before the trial court upon remand.
[2] Nine other states have statutes similar to the Roller Skating Rink Safety and Fair Liability Act: Georgia (Ga.Code Ann. § 51-1-43 (2001)); Illinois (745 Ill. Comp. Stat. Ann. 72/1 to 72/30 (West 2001)); Indiana (Ind.Code Ann. §§ 34-31-6-1 to -4 (2001)); Maine (Me.Rev.Stat. Ann. tit. 9 §§ 603 to 608 (West 2001)); Michigan (Mich. Comp. Laws Ann. §§ 445.1721 to 445.1726 (West 2001)); North Carolina (N.C. Gen.Stat. Ann. §§ 99E-10 to -14 (2001)); Ohio (Ohio Rev.Code Ann. §§ 4171.01 to 4171.10 (West 2002)); South Carolina (S.C.Code Ann. §§ 52-21-10 to -50 (Law Co-op 2002)); Texas (Tex. Health & Safety Code Ann. §§ 759.001 to 759.005 (West 2001)). There is no reported case under any of these statutes dealing with a rink operator's liability for negligence in instructing a person how to roller skate.
[3] We note that the operator of a sports or recreational facility such as a roller skating rink "is subject to a standard of care based on negligence rather than the recklessness standard applicable to participants in recreational sporting activities[.]" Schneider v. American Hockey & Ice Skating Ctr., Inc., 342 N.J.Super. 527, 535, 777 A.2d 380 (App.Div.), certif. denied, 170 N.J. 387, 788 A.2d 772 (2001).