852 A.2d 233 (2004)
371 N.J. Super. 129
Louis MAISONAVE and Myrna Maisonave, Plaintiffs-Appellants,
v.
THE NEWARK BEARS, GOURMET SERVICES, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 2004.
Decided July 12, 2004.
*234 Frank DiGiovanni, Westfield, argued the cause for appellants (Kessler, DiGiovanni and Jesuele, attorneys; Frank DiGiovanni, on the brief).
Timothy J. Schipske, Williamstown, argued the cause for respondent The Newark Bears (Rawle and Henderson, attorneys, Marlton; Mr. Schipske, on the brief).
James J. Horan, argued the cause for respondent Gourmet Dining (Mautone and Horan, attorneys; Mr. Horan, on the brief).
Before Judges PRESSLER, PARKER and R.B. COLEMAN.
The opinion of the court was delivered by R.B. COLEMAN, J.A.D.
Plaintiff Louis Maisonave was struck in the eye by a foul ball while he was standing at a vending cart operated by defendant Gourmet Dining Services, which had a contract with defendant The Newark Bears for food and beverage concessions at Riverfront Stadium in Newark. He appeals from an order granting summary judgment in favor of the defendants and dismissing his complaint with prejudice. We reverse.
In her written opinion setting forth the reasons for the order, the motion judge relied on our opinion in Schneider v. American Hockey and Ice Skating Ctr., 342 N.J.Super. 527, 777 A.2d 380 (App. Div.), certif. denied, 170 N.J. 387, 788 A.2d 772 (2001). There, we held that operators of sports facilities such as hockey rinks *235 and baseball stadiums owe spectators a limited duty of care which has two components: (1) to provide protected areas sufficient for those spectators who may reasonably desire protected areas and (2) to provide protected areas for spectators in the most dangerous section of the stand, for example, behind home plate in baseball and behind the goals in hockey. The motion judge concluded, as a matter of law, that the limited duty of care was not breached in this case. In our view, the court defined that duty too narrowly.
We employ the same standard that governs trial courts in reviewing summary judgment orders. Prudential Property & Casualty Insurance Company v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597, 600 (App.Div.1998), (citing Antheunisse v. Tiffany & Co., Inc., 229 N.J.Super. 399, 402, 551 A.2d 1006, 1007 (App.Div.1988), certif. denied, 115 N.J. 59, 556 A.2d 1206 (1989); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 539-40, 666 A.2d 146, 156 (1995)). We accept the facts as recounted in the opinion of the motion judge and as summarized below, but "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Tp. Committee, 140 N.J. 366, 378, 658 A.2d 1230, 1237 (1995). (citations omitted)
As of August 26, 1999, the date of the incident that is the subject of this civil action, the concession areas at Riverfront Stadium had not been completed. This necessitated the use of portable vending carts. By mutual agreement, defendants determined to place the carts so that the customers could face the field and continue to watch the game. At least one cart was positioned close to home plate and behind the protected backstop screening along the first base line and one along the third base line. Other carts, including the one patronized by plaintiff, were positioned in unscreened areas where patrons were vulnerable to injury as a result of foul balls leaving the field of play.
On the date in question, plaintiff, an experienced baseball player and long-time spectator, entered the stadium with a general admission ticket for a seat in an unscreened area on the first base side of the field.[1] He never went to his seat, choosing instead to stand along the railing to watch the game for approximately an hour before going to the concession stand. Plaintiff waited in line at the vending cart for what he estimated to be five or ten minutes "shooting the breeze" with others in line. His turn finally came. While reaching into his pocket to gather money to pay for a beer, he heard someone yell "look out". The vendor ducked sideways, but when plaintiff looked up the ball struck him in the face.
The motion judge correctly recognized that the determination of a duty of care and the scope of such duty involves "a rather complex analysis that considers the relationship of the parties, the nature of the riskthat is, its foreseeability and severityand the impact the imposition of a duty would have on public policy." Crawn v. Campo, supra, 136 N.J. at 503, 643 A.2d at 604; Schneider v. American Hockey *236 and Ice Skating Inc., supra, 342 N.J.Super. at 532, 777 A.2d at 383. We have already determined in Schneider that the operators of a commercial sports facility owe a limited duty to spectators, the second component of which is to screen any spectator area that is subject to a high risk of injury. When we said that the second component "may be satisfied by the operator providing screened seats behind home plate in baseball and behind the goals in hockey[,]" our identification of those locations was not intended to be exhaustive nor immutable. Id. at 534, 777 A.2d at 384. Rather, "the measure of that duty is `due care under all the circumstances'". Ibid.
While watching the game, either seated or standing in an unprotected viewing area, spectators reasonably may be expected to pay attention and to look out for their own safety; but the activities and ambiance of a concession area predictably draw the attention of even the most experienced and the most wary fan from the action on the field of play. It is not only foreseeable, but inevitable, that in the process of placing orders or reaching for money or accepting the purchases or striking up conversations with others on line, spectators will be distracted from the action on the field and the risk of injury from flying objects will be increased significantly. The defendants are engaged in a commercial venture which by its nature induces spectators to let down their guard. They have a concomitant duty to exercise reasonable care to protect them during such times of heightened vulnerability. The imposition of a duty under these circumstances, particularly where it involves a temporary arrangement, is not only fair but reasonable. The question remains whether that duty was breached.
We reverse and remand for further proceedings.
NOTES
[1] At the front gate was a sign which cautioned "BEWARE OF OBJECTS LEAVING THE PLAYING FIELD." The limited duty recognized in Schneider, considers "that many spectators choose to `assume the ordinary risks' of being struck by a flying ball or puck in order to obtain an unobstructed view of the playing field and that these are `common and inherent' risks of attending a baseball or hockey game. Crawn [v. Campo, 136 N.J. 494,] 500-01, 643 A.2d 600 (1994)." Schneider, supra, 342 N.J.Super. at 535, 777 A.2d at 385.