J-S31017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF S.A.T. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.M., MOTHER | : | No. 875 EDA 2021 |

Appeal from the Decree Entered April 14, 2021
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2021-A0002

| | | |
|---|---|---|
| IN RE: ADOPTION OF T.T., III | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.M., MOTHER | : | No. 876 EDA 2021 |

Appeal from the Decree Entered April 14, 2021
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2021-A0003

| | | |
|---|---|---|
| IN RE: ADOPTION OF S.A.T. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.M., MOTHER | : | No. 877 EDA 2021 |

Appeal from the Decree Entered April 14, 2021
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2021-A0005

BEFORE:   STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED NOVEMBER 16, 2021**

Appellant, S.M. ("Mother"), appeals from the decrees entered in the

Montgomery County Court of Common Pleas, Orphans' Court Division,

---

[*] Retired Senior Judge assigned to the Superior Court.

granting the petition of Appellee, the Montgomery County Office of Children and Youth ("OCY") for involuntary termination of Mother's parental rights to her minor children, S.A.T., T.T., III, and S.A.T. ("Children").[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. Mother and T.T., Jr. ("Father") are the biological parents of three children born between 2012 and 2015.  OCY initially received a referral about this family after the birth of S-A.T. in 2015.  At that time, Mother tested positive for opioids and admitted taking various drugs in the days leading up to the delivery.  (*See* N.T. Hearing, 4/8/21, at 10).  OCY received another referral on April 23, 2019, after Mother had driven under the influence of alcohol and prescription medication with Children in the vehicle.  (*Id.* at 12).  Although Mother successfully navigated the vehicle back to the family's home, she passed out in front of the house and required hospitalization.  (*Id.*)  This was one of at least three incidents in 2019 where Mother drove with Children while under the influence of alcohol or drugs.  (*See* N.T. Hearing, 4/7/21, at 17-18, 25, 46).

OCY conducted an investigative home visit on May 6, 2019.  At that time, Father reported that Mother had commenced a drug and alcohol rehabilitation program.  (*See* N.T. Hearing, 4/8/21, at 12).  OCY subsequently

_____

[1] Because two of the children have the same initials, we will refer to them as S-A.T. and S.A.T.  We note that the use of a hyphen in one of the child's initials is consistent with how her initials appear in the certified record.  (*See* Orphans' Court Opinion, filed June 3, 2021, at 12).

implemented a family safety plan, but the biological parents failed to comply. (*Id.* at 13). On June 4, 2019, OCY obtained legal and physical custody of Children pursuant to an emergency protective order. That same day, OCY placed Children in a foster home.[2] The foster mother immediately noticed that Children suffered from certain developmental delays, and the biological parents had neglected Children's health and dental care. (*See* N.T. Hearing, 4/7/21, at 107-31).

Shortly after arriving at the foster home, S.A.T. required a three-day stay in a hospital due to complications from her sickle cell anemia, a condition that the biological parents had failed to report to OCY or the foster parents.[3] (*Id.* at 116). Additional testing also confirmed that S.A.T. has certain intellectual limitations due to lead poisoning. (*See* N.T. Hearing, 4/7/21, at 118-20). S.A.T. also suffers from pica, a condition that causes her to eat non-food items. (*Id.* at 78). From the time of Children's placement through March 2021, the foster parents took Children to 122 medical appointments. (*Id.* at 124).

On June 18, 2019, the court adjudicated Children dependent. Although OCY created a family service plan ("FSP") for Mother, she failed to meet her

---

[2] Children have continuously resided in the same foster home ever since the initial placement. (*See* N.T. Hearing, 4/7/21, at 106).

[3] S-A.T. also suffers from sickle cell anemia. (*See* N.T. Hearing, 4/7/21, at 129).

goals. (*See* N.T. Hearing, 4/8/21, at 28-36). Significantly, Mother failed to maintain her recovery from substance abuse, as she tested positive for oxycodone as recently as March 12, 2021. (*Id.* at 36).

On January 8, 2021, OCY filed petitions for involuntary termination of Mother's parental rights to each child. The court conducted a virtual termination hearing on April 7, 2021. Due to the number of witnesses, the hearing continued on April 8, 2021. At the conclusion of the hearing, the court provided an on-the-record statement of reasons in support of terminating Mother's parental rights. (*See* N.T. Hearing, 4/8/21, at 188-220). On April 14, 2021, the court formally entered final decrees involuntarily terminating Mother's parental rights.[4] On April 26, 2021, Mother timely filed separate notices of appeal and concise statements of errors at each underlying docket number. This Court consolidated the appeals *sua sponte* on May 24, 2021.

Mother now raises one issue for our review:

> The [Orphans'] Court erred in finding clear and convincing evidence existed to terminate … Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (8), and (b).

(Mother's Brief at 7).

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the

---

[4] The court also involuntarily terminated Father's parental rights, but he is not a party to the current appeal.

order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d

1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

OCY filed a petition for the involuntary termination of Mother's parental rights on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*     \*     \*

(2)   The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*     \*     \*

**(b)   Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).   "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra*

at 1117.[5]

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of … her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

On appeal, Mother explains that she took advantage of many of the resources offered by OCY, and she provides reasons for her partial noncompliance with the FSP goals. Regarding her substance abuse, Mother argues that a doctor first prescribed oxycodone for her following a "bad car accident" in 2010. (Mother's Brief at 11). Mother acknowledges that she "faced obstacles with her sobriety in April and May of 2019," and she links her substance abuse to the "depression" that followed her father's passing in 2018. (*Id.*) Although her drug use led to multiple arrests in 2019, Mother emphasizes that she is now a part of the Montgomery County Behavioral Health Court program, which is greatly aiding in her recovery.

Prior to Children's placement, Mother insists that she attended all medical appointments, and she diligently catered to Children's healthcare

---

[5] OCY also sought the involuntary termination of Mother's parental rights under Section 2511(a)(1) and (8), but we need only analyze Section 2511(a)(2) for purposes of this appeal.

needs. After Children's placement, Mother asserts that she kept in frequent contact with the foster parents, making over 50 telephone calls for updates on Children. Mother also contends that she attended supervised visits in the fall of 2019. Mother notes that she continued to participate in virtual visits throughout the COVID-19 pandemic, at which time she "engaged the children with activities." (*Id.* at 13). Although "[t]he pandemic presented impediments" to Mother's ability to comply with the FSP goals, Mother posits that she is "in a better and healthier space than a year ago." (*Id.* at 15).

Mother maintains that she shares a beneficial bond with each of her children. Mother relies on Children's own assertions regarding their love for her and their desire for reunification. (*See id.* at 18). To the extent that the court-appointed expert opined that Children would not suffer permanent harm if Mother's parental rights were terminated, Mother complains that the expert evaluated her during a telephone call. Mother claims that she "was not comfortable talking about herself during her assessments," and pandemic-related delays in her mental health treatment also impacted the results of her assessment. (*Id.* at 21). Based upon the foregoing, Mother concludes that the Orphans' Court erroneously terminated her parental rights. We disagree.

"The bases for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re S.C.B.*, 990

A.2d 762, 771 (Pa.Super. 2010). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *In re A.L.D.*, 797 A.2d 326, 340 (Pa.Super. 2002). Under Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

Under Section 2511(b), the court must consider whether termination will best serve the child's needs and welfare. *In re C.P.*, 901 A.2d 516 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* at 520 (internal citations omitted). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements

within a reasonable time following intervention by the state, may properly be considered unfit and have … her rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of…her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

Instantly, the Orphans' Court evaluated the evidence presented at the termination hearings and concluded that Mother refused or failed to perform

her parental duties for each child:

> [W]hen the children were initially removed from the custody of the birth parents, [the birth parents] failed to inform the case worker that their children required daily medication in order to prevent medical crises from sickle cell disease. After the children were removed from birth parents' care, foster mother testified to taking the children to a total of approximately 122 appointments from the time the children were placed with her until March 2021 in order to properly address all the children's medical needs. With the exception of two calls to foster mother and participation via phone for four medical visits, neither birth mother nor birth father reached out to foster mother, the case worker, or the treating doctors to check in on the wellness and medical progress of the children, or to ask about the children's educational needs and progress. This is despite the fact that foster mother intentionally maintained all the same doctors for ease of the children and [the birth parents]. Further, S-A.T.'s trauma therapist … testified to reaching out to birth mother and father to discuss S-A.T.'s treatment, however, [the birth parents] did not answer or call back … to engage regarding S-A.T.'s therapy treatment.
>
> Birth parents here failed to properly care for their children's needs while the children were with birth parents, and birth parents continued to fail to show concern for their children's needs after they were removed, despite all three children having significant medical and educational needs.
>
> [OCY has] established by clear and convincing evidence that birth mother and birth father have an incapacity to parent that has led their children to be without essential care and that they have neglected their children, causing them to be without essential care. Thus, [OCY] has established a basis for termination of the parental rights of both birth parents under 23 Pa.C.S.A. § 2511(a)(2). The record is clear here that both birth parents neglected not only their children's medical needs, but their basic daily needs as well. When taken in to care by foster mother, S.A.T. was nearly five years old but weighed only 33 pounds and was wearing 24-month clothing. None of the children were able to engage in basic self-care such as dressing and bathing themselves.

> The court [seeks] to emphasize that birth mother's and birth father's incapacity to parent and to ensure that their children's basic needs are met on a daily basis is both long standing and continuing. Dr. Miksic's report … confirms that both parents continue to minimize their role in their children's severe medical and intellectual needs.[6] [Mother] denied that the children had any unusual dental needs, despite all of the children needing dental surgery. [Mother] also denied that [S.A.T.] had lead poisoning from eating paint chips off the walls.

(Orphans' Court Opinion at 1-3) (internal record citations omitted). On this record, the court correctly determined that Mother's incapacity caused Children to be without essential parental care, and the causes of the incapacity cannot or will not be remedied. *See Interest of Lilley, supra*. Simply put, Mother's battle with substance abuse prevents her from effectively managing Children's complex medical and emotional needs.

Additionally, the court acknowledged Mother's entry into the county's Behavioral Health Court program. The court, however, emphasized that Mother's delay in seeking assistance worked to Children's detriment:

> The [Orphans'] Court credits [Mother's] testimony that she had been seeking admission into the Behavioral Health Court for some time and applauds her decision to enter the Behavioral Health Court and to work hard at her own recovery and to obtain the services that she needs. However, the [Orphans'] Court is concerned and aware that it has taken—the children have been in care now for over twenty-two months, and for most of that time, birth mother declined offers of assistance from … the [OCY] caseworker

---

[6] At the termination hearing, OCY presented Dr. Stephen Miksic as "an expert in the areas of general psychology, parenting capacity, and bonding." (N.T. Hearing, 4/7/21, at 171). Dr. Miksic evaluated Mother's parenting capacity and conducted a bonding evaluation in January 2020. (*See id.* at 173).

> to try to help her address her mental health needs, her substance abuse needs, and she was waiting for the—addressing her requirements until she could enter the Behavioral Health Court program.
>
> While I don't doubt that the Behavioral Health Court program is to her benefit …, twenty-two months … is simply too long to wait when her children have serious needs for attention … that a parent must provide to them in the moment and from moment to moment and from the beginning.

(N.T. Hearing, 4/8/21, at 198-99). We agree with the court's analysis and reiterate that parental rights are not preserved by waiting for a more suitable time to perform one's parental responsibilities while others provide for the children's physical and emotional needs. *See In re B., N.M., supra*.

Regarding Section 2511(b), the court recognized that termination of Mother's parental rights would best serve Children's needs and welfare. (*See* Orphans' Court Opinion at 7). Here, Dr. Miksic opined that Children did not have strong bonds with Mother. (*See* N.T. Hearing, 4/7/21, at 187, 190). Regarding T.T., III, Dr. Miksic explained that there "are elements of conflict" between T.T., III and Mother that make the bond unhealthy. (*Id.* at 187). For S.A.T., Dr. Miksic indicated that her bond with Mother was "weak and insecure" with "some unhealthy elements." (*Id.* at 190). Dr. Miksic also testified that Mother's bond with S-A.T. was similar to that of the other Children. (*Id.*) Dr. Miksic also recounted an interview with S-A.T. where the child "actually made a spontaneous comment that her parents … didn't keep her safe…." (*Id.*)

Terminating Mother's parental rights would not destroy existing, necessary, and beneficial relationships for Children. *See In re Z.P., supra*. Based upon the foregoing, the record supports the court's conclusion that clear and convincing evidence supported termination of Mother's parental rights under Sections 2511(a)(2) and (b). *Id.* Consequently, we affirm the decrees terminating Mother's parental rights to Children.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2021